STATE OF CONNECTICUT *v.* MASHAWN GREENE
(SC 17101)

Sullivan, C. J., and Borden, Norcott, Katz and Zarella, Js.

Argued January 11—officially released June 21, 2005

*Mark Rademacher*, assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Christopher Alexy*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, C. J. The defendant, Mashawn Greene, was convicted after a jury trial of manslaughter in the first degree with a firearm as an accessory in violation of General Statutes §§ 53a-8 (a)[1] and 53a-55a,[2] conspir-

---

[1] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[2] General Statutes § 53a-55a (a) provides in relevant part: "A person is guilty of manslaughter in the first degree with a firearm when he commits

acy to commit manslaughter in the first degree with a firearm in violation of General Statutes §§ 53a-48[3] and 53a-55a, five counts of assault in the first degree as an accessory in violation of General Statutes §§ 53a-8 (a) and 53a-59 (a) (5),[4] conspiracy to commit assault in the first degree in violation of §§ 53a-48 (a) and 53a-59 (a) (5) and possession of an assault weapon in violation of General Statutes § 53-202c.[5] Additionally, prior to the start of trial, the defendant pleaded guilty to three counts of theft of a firearm in violation of General

manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. . . ."

General Statutes § 53a-55 (a) provides: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person; or (2) with intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he committed the proscribed act or acts under the influence of extreme emotional disturbance, as provided in subsection (a) of section 53a-54a, except that the fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subsection; or (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[3] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[4] General Statutes § 53a-59 provides in relevant part: "(a) A person is guilty of assault in the first degree when . . . (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm. . . ."

[5] General Statutes § 53-202c (a) provides in relevant part: "Except as provided in section 53-202e, any person who, within this state, possesses any assault weapon, except as provided in sections 29-37j, 53-202a to 53-202k, inclusive, and 53-202o and subsection (h) of section 53a-46a, shall be guilty of a class D felony and shall be sentenced to a term of imprisonment of which one year may not be suspended or reduced . . . ."

Statutes § 53a-212 (a).[6] The defendant appeals from the judgment of conviction pursuant to General Statutes § 51-199 (b) (3).

The defendant claims on appeal that: (1) his guilty pleas were involuntary because the trial court, his defense counsel and the prosecutor improperly failed to inform him that his pleas could and would be used against him at trial; (2) his convictions for manslaughter in the first degree with a firearm and conspiracy to commit manslaughter in the first degree with a firearm deprived him of his sixth amendment right to notice; (3) his convictions for conspiracy to commit manslaughter in the first degree with a firearm and conspiracy to commit assault in the first degree violate the double jeopardy clause; and (4) the trial court improperly permitted the introduction of hearsay statements in violation of his sixth amendment right to confrontation.

With respect to the defendant's first claim on appeal, we disagree that his pleas were involuntary and, accordingly, affirm the judgment of the trial court. With respect to the defendant's second claim on appeal, we agree that the defendant's conviction for manslaughter in the first degree with a firearm as an accessory deprived him of his sixth amendment right to notice and, accordingly, modify the judgment of the trial court to manslaughter in the first degree as an accessory in violation of General Statutes §§ 53a-8 (a) and 53a-55 (a) (1) and remand the case to the trial court for resentencing. We need not address the defendant's sixth amendment or double jeopardy claims concerning his conviction for conspiracy to commit manslaughter in the first degree with a firearm because we conclude that conspiracy to commit manslaughter in the first degree with a firearm is not

---

[6] General Statutes § 53a-212 (a) provides: "A person is guilty of stealing a firearm when, with intent to deprive another of his firearm or to appropriate the same to himself or a third party, he wrongfully takes, obtains or withholds a firearm, as defined in subdivision (19) of section 53a-3."

a cognizable offense under Connecticut law. Lastly, we disagree with the defendant that the trial court improperly admitted hearsay statements in violation of his sixth amendment right to confrontation.

The jury could have reasonably found the following facts. On the evening of October 10, 2001, the defendant purchased the following stolen firearms: a Smith & Wesson Daniels Cobray M-11 nine millimeter submachine gun (Cobray M-11); a Braco Arms .38 caliber pistol; and a Mossberg 500A shotgun. At the same time, the defendant purchased stolen ammunition for the Cobray M-11 consisting of eight full thirty-five round magazines loaded with nine millimeter Luger Subsonic bullets. A Cobray M-11 is a semiautomatic or automatic assault weapon capable of emptying a thirty-five round magazine in under two seconds.

On October 12, 2001, the defendant, Franki Jones, Markeyse Kelly, Shaunte Little and Marquis Mitchell learned that individuals from the area of New Haven known as "the Tre" were planning to "shoot up" the area of New Haven known as "West Hills" in retaliation for a shooting that had occurred the night before. The Tre area includes Elm Street and Orchard Street and the West Hills area includes the McConaughy Terrace projects. Rather than wait for the retaliation, the defendant, Jones, Kelly, Little and Mitchell decided to "go through the Tre first."

The defendant drove the four men to Jones' house where those who were not armed already retrieved guns and those with lighter colored clothing changed into darker attire. The defendant armed himself with the Cobray M-11. All five men got into Jones' grey Lincoln Town Car and drove to the Tre. After they saw a group of people on the corner of Edgewood Avenue and Orchard Street, Jones parked the car next to a vacant house on Orchard Street. The defendant, Jones,

Kelly, Little and Mitchell walked to the corner of Orchard Street and Edgewood Avenue, opened fire on the people on the street corner, then ran back to the Lincoln Town Car and fled the scene. Six people were shot and one of the victims died from his wounds. The victims had no connection to the shooting that had occurred the evening before and were targeted merely because of their presence in the Tre area. After the shooting, the defendant, Jones, Kelly, Little and Mitchell returned to Jones' house. The five men then returned to the scene of the shooting in the defendant's rental car in order to retrieve an empty magazine clip that the defendant had left behind. Discovering a heavy police presence, however, they left the area and went their separate ways. Further facts will be set forth as necessary.

I

The defendant first claims that his three guilty pleas to theft of a firearm in violation of § 53a-212 (a) were involuntary because the trial court, his defense counsel and the prosecutor failed to inform him that the pleas could be used against him at trial. Specifically, the defendant argues that his guilty pleas were involuntary because they: (1) were the product of the trial court's failure to inform him of the direct consequences of his pleas; (2) lacked an adequate factual basis; (3) were induced by the prosecutor's failure to inform him that his pleas would be used against him at trial; and (4) resulted from ineffective assistance of counsel because his attorney failed to inform him that his guilty pleas could be used against him at trial. We reject this claim.

The following additional facts are necessary to our resolution of this claim. On October 10, 2001, Felipe Garcia broke into an East Haven home and stole a Cobray M-11, a Braco Arms .38 caliber pistol and a Mossberg 500A shotgun. Garcia also stole eight full

thirty-five round magazines loaded with Remington nine millimeter Luger Subsonic bullets. On that same night, Garcia sold the stolen weapons and ammunition to the defendant for $300.

On June 3, 2003, the defendant pleaded not guilty to the charges arising from his alleged involvement in the Edgewood Avenue and Orchard Street shooting. The defendant pleaded guilty, however, to three counts of theft of a firearm resulting from his purchase of stolen firearms from Garcia. The trial court canvassed the defendant concerning the voluntariness of his guilty pleas. The prosecutor explained the foregoing factual basis for the defendant's guilty pleas and the defendant admitted that these facts were essentially true. The defendant informed the court that he understood and had discussed with his attorney the evidence that would be produced against him at trial and the elements that the state would need to prove in order for him to be found guilty of the crimes charged. The defendant assured the trial court that he understood that theft of a firearm is a felony and that he was aware of the minimum and maximum sentences. Moreover, the defendant informed the trial court that he knew the rights he was foregoing by entering his guilty pleas, that he was entering the pleas of his own free will and that no one had made any threats or promises to induce the pleas.

On July 8, 2003, during the defendant's trial on the remaining charges, the state moved to admit into evidence a transcript of the defendant's guilty pleas to prove that the defendant had been involved in the Edgewood Avenue and Orchard Street shooting and to prove that the defendant had had the means to commit the crimes with which he was charged. The defendant filed a motion in limine to prevent the introduction of his pleas. The defendant argued that the pleas were not relevant because he had pleaded guilty to *stealing* the

weapons, not to *possessing* them, and that his theft of the weapons on October 10, 2001, did not establish that he possessed the weapons two days later. Further, the defendant claimed that the probative value of his guilty pleas was outweighed by their prejudicial effect. The trial court found the pleas to be relevant, but rather than entering the transcript of the pleas into evidence, the parties entered into a stipulation, which was read to the jury, that the defendant had pleaded guilty to purchasing the weapons and ammunition from Garcia.[7] At no point did the defendant seek to withdraw his pleas.

The defendant concedes that his claim was not preserved at trial and seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[8] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists

[7] The stipulation was read to the jury as follows: "The state and the defendant have stipulated or agreed that at an earlier proceeding, [the defendant pleaded] guilty to purchasing from . . . Garcia three weapons including a [Cobray M-11], a submachine gun, a Mossberg 500A shotgun, black with pistol grip, and a Braco Arms .38 caliber pistol. Additionally, he admitted purchasing eight full [thirty-five] round magazines in two pouches which were loaded with [nine millimeter] Luger Subsonic ammunition for the [Cobray M-11]."

[8] The defendant also seeks review under the plain error doctrine. Practice Book § 60-5 provides in relevant part that "[t]he court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." "The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Alston*, 272 Conn. 432, 456, 862 A.2d 817 (2005). For the reasons discussed in part I A through D of this opinion, the defendant has failed to establish plain error in the present matter.

and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) Id.

We conclude that the first and third bases for the defendant's claim, namely, that his guilty pleas were involuntary and unknowing because the trial court failed to inform him of the direct consequences of his pleas and the state failed to inform him that his pleas would be used at his subsequent trial, are reviewable under *Golding* because the record is adequate for review and the claim is of constitutional magnitude. We further conclude, however, that the defendant cannot prevail on his claim under the third prong of *Golding*. See *State* v. *Whitford*, 260 Conn. 610, 621, 799 A.2d 1034 (2002) ("[t]he first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail" [internal quotation marks omitted]). We decline to review the second basis for the defendant's claim, namely that his pleas were involuntary and unknowing because the trial court failed to establish a factual basis for his pleas, because the claim is not of constitutional magnitude. We also decline to review the fourth basis for the defendant's claim, namely that his pleas were involuntary and unknowing because they were the product of ineffective assistance of counsel, because it cannot be addressed adequately in this appeal.

Before addressing the defendant's claim, we review the law governing guilty pleas. "It is axiomatic that unless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. . . . A plea of guilty is, in effect, a conviction, the equivalent of a guilty verdict by

a jury. . . . In choosing to plead guilty, the defendant is waiving several constitutional rights, including his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers. . . . The . . . constitutional essentials for the acceptance of a plea of guilty are included in our rules and are reflected in Practice Book §§ [39-19 and 39-20].[9] . . . The failure to inform a defendant as to all possible indirect and collateral consequences does not render a plea unintelligent or involuntary in a constitutional sense." (Citations omitted; internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 200–202, 842 A.2d 567 (2004).

A

The defendant first claims that his guilty pleas were unintelligent and involuntary because the trial court failed to inform him of the direct consequences of his pleas. Specifically, the defendant argues that his guilty

---

[9] Practice Book § 39-19 provides: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

Practice Book § 39-20 provides: "The judicial authority shall not accept a plea of guilty or nolo contendere without first determining, by addressing the defendant personally in open court, that the plea is voluntary and is not the result of force or threats or of promises apart from a plea agreement. The judicial authority shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the prosecuting authority and the defendant or his or her counsel."

pleas were involuntary because the trial court did not inform him that his pleas could be introduced in his later trial on factually related charges. We disagree.

The rules governing the acceptance of guilty pleas, set forth in Practice Book §§ 39-19 and 39-20, provide that "the trial court must not accept a guilty plea without first addressing the defendant personally in open court and determining that the defendant fully understands the items enumerated in § 39-19, and that the plea is made voluntarily pursuant to § 39-20. There is no requirement, however, that the defendant be advised of every possible consequence of such a plea. . . . Although a defendant must be aware of the direct consequences of a plea, the scope of direct consequences is very narrow. . . . In Connecticut, the direct consequences of a defendant's plea include only the mandatory minimum and maximum possible sentences; Practice Book § [39-19 (2) and (4)]; the maximum possible consecutive sentence; Practice Book § [39-19 (4)]; the possibility of additional punishment imposed because of previous conviction(s); Practice Book § [39-19 (4)]; and the fact that the particular offense does not permit a sentence to be suspended. Practice Book § [39-19 (3)] . . . ." (Internal quotation marks omitted.) *State* v. *Faraday,* supra, 268 Conn. 201–202.

Sections 39-19 and 39-20 do not require the trial court to inform the defendant that his guilty pleas could be used against him in a subsequent trial on factually related charges. The defendant points out, however, that in *State* v. *Andrews,* 253 Conn. 497, 507 n.8, 752 A.2d 49 (2000), we declined to hold, "as a matter of law, that there can *never* be direct consequences to a guilty plea . . . beyond those listed in Practice Book § 39-19." (Emphasis added.) Accordingly, the defendant urges this court to expand the definition of direct consequences beyond those listed in Practice Book § 39-19 to include the potential use of the defendant's guilty plea

against him in a subsequent trial on factually related charges. The defendant relies on *People* v. *Ortiz*, 141 Misc. 2d 747, 534 N.Y.S.2d 316 (1988), in support of his argument.[10] We conclude that *Ortiz* is inapplicable to the present matter.

In *Ortiz*, the defendant pleaded guilty to assault in the first degree and admitted, as the factual basis for his plea, that he shot the victim five times. Id., 748, 750. Two years after the defendant had pleaded guilty and

---

[10] In support of his argument, the defendant also relies on *United States* v. *Williams*, 104 F.3d 213 (8th Cir. 1997), *United States* v. *Campusano*, 947 F.2d 1 (1st Cir. 1991), and *United States* v. *Maestas*, 941 F.2d 273 (5th Cir. 1991), cert. denied, 502 U.S. 1046, 112 S. Ct. 909, 116 L. Ed. 2d 809 (1992). In those cases, the courts held that the use of a *state* guilty plea in a subsequent *federal* proceeding is not a direct consequence of the plea, at least in the absence of collusion between state and federal officials, misrepresentation, or an effort to hide the consequences of a plea. See *United States* v. *Williams*, supra, 216–17; *United States* v. *Campusano*, supra, 5; *United States* v. *Maestas*, supra, 279. All of the courts reasoned that the state and federal systems are separate and distinct and that "the defendant need only be informed of the direct consequences he may face *within the particular system*." (Emphasis added; internal quotation marks omitted.) *United States* v. *Williams*, supra, 216; *United States* v. *Maestas*, supra, 279; see *United States* v. *Campusano*, supra, 5. The defendant in the present case essentially argues that, because both the guilty plea and the subsequent prosecution were within the same system, the use of the plea in the prosecution was a direct consequence of which he was entitled to be informed. We are not persuaded. All of the cases cited by the defendant relied on *United States* v. *Long*, 852 F.2d 975 (7th Cir. 1988), in support of their conclusion. In *Long*, the court stated that "[t]he state and federal systems are separate and distinct, and the defendant need only be informed of the direct consequences he may face within the particular system. Therefore, the state court, even if knowledgeable about federal criminal law, need not undertake to inform the defendant of his potential federal criminal liability: *the nature of the state sentence was unaffected by the federal prosecution and sentence*." (Emphasis added.) Id., 979. Thus, it was not the fact that the guilty plea and subsequent prosecution were before separate sovereigns that was dispositive in *Long*, but the fact that the sentence on the guilty plea could not be affected by the subsequent prosecution. That would be the case regardless of whether the guilty plea and subsequent prosecution were before the same sovereign or different sovereigns. Accordingly, *Williams*, *Campusano* and *Maestas* do not support the defendant's claim.

had begun serving his prison term, the victim died. Id., 751. The defendant was then charged and tried for murder in the second degree. Id. In the defendant's murder trial, the prosecution sought to introduce the factual admissions that the defendant had made during his guilty plea. Id. The court held that the defendant's guilty plea was inadmissible because the trial court never had informed the defendant that his plea could be used against him in a later murder trial. Id., 752. The court reasoned that there was a reasonable probability that the defendant would not have pleaded guilty had he known that the plea could be used in such a manner and, therefore, concluded that such a use was a direct consequence of the plea. Id. Accordingly, the court held that the plea was involuntary and inadmissible. Id., 752, 754.

First, we agree with the Supreme Court of Illinois that the validity of *Ortiz* is questionable, "even as a matter of New York law"; *People* v. *Williams*, 188 Ill. 2d 365, 374, 721 N.E.2d 539 (1999); because New York follows the standard set forth in *Cuthrell* v. *Director, Patuxent Institution*, 475 F.2d 1364, 1366 (4th Cir.), cert. denied, 414 U.S. 1005, 94 S. Ct. 362, 38 L. Ed. 2d 241 (1973),[11] which limits the direct consequences of a plea to those having a "definite, immediate and largely automatic effect on the range of [the] defendant's punishment . . . ." (Citation omitted.) *People* v. *Ford*, 86 N.Y.2d 397, 403, 657 N.E.2d 265, 633 N.Y.S.2d 270 (1995), citing *Cuthrell* v. *Director, Patuxent Institution*, supra, 1366. Under the *Cuthrell* standard, it is "quite-settled . . . that the direct consequences of a guilty plea are limited to the *penal* consequences of that plea, i.e., the

---

[11] In *State* v. *Andrews*, supra, 253 Conn. 507, we held that "Practice Book § 39-19 defines the scope of the . . . constitutional mandate that a defendant be advised of all direct consequences of his plea, while the *Cuthrell* standard simply enumerates several characteristics of those direct consequences."

consequences that relate to the sentence imposed on the basis of the plea." (Emphasis in original.) *People* v. *Williams*, supra, 373. The evidentiary use of a defendant's guilty plea to first degree assault in a later murder trial, however, has nothing to do with the defendant's *sentence* for first degree assault and, therefore, is not a penal consequence. Cf. id. In other words, because such a use would not have a "definite, immediate and largely automatic effect on [the range of the] defendant's punishment," it would not be a direct consequence of the plea. *People* v. *Ford*, supra, 403.

Second, in *Ortiz*, the conduct that formed the basis for the defendant's guilty plea, namely, shooting the victim five times, was the exact same conduct that formed the basis for his murder charge. See *People* v. *Ortiz*, supra, 141 Misc. 2d 753 (observing that defendant had "simply been 'indicted up' from assault to murder"). In the present matter, however, the conduct that formed the basis for the defendant's guilty pleas, purchasing stolen weapons two days before the shooting, is not the same conduct that formed the basis for the charges at trial. Accordingly, we find the facts of *Ortiz* to be distinguishable from the present matter.

We conclude that the introduction of the defendant's guilty pleas at his trial on factually related charges was not a direct consequence of his pleas. Accordingly, the trial court did not have a constitutional duty to inform the defendant that his guilty pleas could be introduced as evidence in his subsequent trial,[12] and the defendant's claim fails to satisfy the third prong of *Golding*.

---

[12] As in *State* v. *Andrews*, supra, 253 Conn. 507–508 n.8, "[w]e recognize . . . that the trial courts are free to give advice at a plea canvass beyond the items enumerated in Practice Book § 39-19 . . . and that the legislature may require trial courts to give information beyond the information required by due process." (Citation omitted.)

## B

The defendant next claims that his guilty pleas were unintelligent and involuntary because they lacked an adequate factual basis. The defendant argues that the trial court had a constitutional duty to establish an adequate factual basis for his pleas prior to their acceptance because the prosecution's use of the defendant's pleas in his trial on factually related charges put the court on notice that there was a need for an inquiry into the factual basis of the pleas. We disagree.

It is well settled that "our state courts are under no constitutionally imposed duty to establish a factual basis for a guilty plea *prior to its acceptance* unless the judge is put on notice that there may be some need for such an inquiry." (Emphasis added.) *State* v. *Niblack,* 220 Conn. 270, 281, 596 A.2d 407 (1991); *Paulsen* v. *Manson,* 203 Conn. 484, 490–91, 525 A.2d 1315 (1987). Although the defendant argues that the prosecution's use of the defendant's guilty pleas at his trial put the court on notice that it needed to establish an adequate factual basis for the defendant's pleas, the record reveals that the prosecution did not attempt to introduce the defendant's pleas into evidence until July 8, 2003, more than one month after the trial court had accepted the defendant's guilty pleas. There is no indication in the record that the trial court was aware, prior to its acceptance of the defendant's guilty pleas, that the prosecution would use the defendant's pleas at his subsequent trial. Therefore, even if we assume that such knowledge would trigger the court's constitutional duty to establish a factual basis for the guilty pleas, the court had no such knowledge and, therefore, had no such duty.[13] Accordingly, we decline to review the defendant's claim under the second prong of *Golding.*

---

[13] Practice Book § 39-21 provides that "[t]he judicial authority shall not accept a plea of guilty unless it is satisfied that there is a factual basis for the plea." In the present matter, the trial court conducted an inquiry into the factual basis for the defendant's guilty pleas and expressly found that

## C

The defendant next claims that his guilty pleas were unintelligent and involuntary because they were induced by the state's intentional failure to inform him that his pleas would be used as evidence in his subsequent trial on factually related charges. Specifically, the defendant argues that the state actively concealed its intent to use his pleas in his subsequent trial and that this omission amounted to a misrepresentation. We disagree.

The defendant cites *United States* v. *Williams*, 104 F.3d 213 (8th Cir. 1997), and *United States* v. *Campusano*, 947 F.2d 1 (1st Cir. 1991), in support of his claim. These cases state in dicta that a guilty plea in a state proceeding that is used in a subsequent federal prosecution on factually related charges may be unknowing and involuntary if the "state prosecutors actively hid knowledge *of the federal prosecution,* or colluded with federal officials." (Emphasis added; internal quotation marks omitted.) *United States* v. *Williams*, supra, 216; see also *United States* v. *Campusano*, supra, 5 ("appellant may attack the plea if it was induced by a material omission tantamount to a misrepresentation" [internal quotation marks omitted]). We are not persuaded by the defendant's argument. In the present matter, the state did not conceal its intent to prosecute because the charges on which the defendant was prosecuted were pending at the time of the plea. Further, the defendant has failed to point to any evidence in the record, and we have found none, to support his assertion that at the time his pleas were accepted by

his pleas were supported by an adequate factual basis. After the trial court accepted the defendant's pleas on June 3, 2003, but prior to the defendant's sentencing on October 3, 2003, the defendant could have moved for withdrawal of his pleas on the grounds that "[t]here was no factual basis for the plea[s] . . . ." Practice Book § 39-27 (5); see also Practice Book § 39-26. We note that the defendant never moved to withdraw his pleas.

the trial court, the state prosecutors intended to use his pleas in his subsequent trial and actively concealed this intent. Accordingly, the defendant's claim fails under the third prong of *Golding*.

D

The defendant next claims that his guilty pleas were unknowing and involuntary because they were induced by the ineffective assistance of his counsel. Specifically, the defendant argues that defense counsel was unaware that his guilty pleas could be used as evidence in his subsequent trial on factually related charges and, therefore, failed to advise him competently with respect to his guilty pleas. We decline to review this claim.

"Almost without exception, we have required that a claim of ineffective assistance of counsel must be raised by way of habeas corpus, rather than by direct appeal, because of the need for a full evidentiary record for such [a] claim. . . . *Absent the evidentiary hearing available in the collateral action, review in this court of the ineffective assistance claim is at best difficult and sometimes impossible.* The evidentiary hearing provides the trial court with the evidence which is often necessary to evaluate the competency of the defense and the harmfulness of any incompetency."[14] (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Turner*, 267 Conn. 414, 426, 838 A.2d 947, cert. denied, 543 U.S. 809, 125 S. Ct. 36, 160 L. Ed. 2d 12 (2004). "[O]n the rare occasions that we have addressed an ineffective assistance of counsel claim on direct appeal . . . we have limited our review to situations in which the record of the trial court's allegedly

---

[14] Practice Book § 39-27 (4) provides an explicit exception to the general rule and permits a defendant to withdraw his guilty plea after it has been accepted by the trial court if the "plea resulted from the denial of effective assistance of counsel . . . ." The defendant never sought to withdraw his pleas pursuant to § 39-27 (4).

improper action was adequate for review or the issue presented was a question of law, not one of fact requiring further evidentiary development." (Internal quotation marks omitted.) Id., 427.

The defendant claims that his ineffective assistance of counsel claim can be addressed on direct appeal because the record adequately reflects defense counsel's incompetence. Specifically, the defendant argues that defense counsel's motion in limine and oral arguments seeking to preclude the admission of the defendant's pleas at trial demonstrate that defense counsel was unaware, at the time of the pleas, that they could be introduced at trial. We disagree.

"The transcript of the proceedings in the trial court allows us to examine the *actions* of defense counsel but not the underlying *reasons* for his actions." (Emphasis in original; internal quotation marks omitted.) *State v. Tirado*, 194 Conn. 89, 92, 478 A.2d 606 (1984). "Our role . . . is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. Without a hearing in which the reasons for counsel's decision may be elicited, any decision of ours . . . would be entirely speculative." *State v. Chairamonte*, 189 Conn. 61, 64, 454 A.2d 272 (1983). In the present matter, the record does not reveal the extent of defense counsel's knowledge concerning the subsequent evidentiary use of guilty pleas, the advice that defense counsel gave to the defendant, if any, concerning the collateral effects of pleading guilty to certain charges and proceeding to trial on others, and the reasons for defense counsel's decisions and actions. These questions of fact cannot be resolved without an evidentiary hearing. See, e.g., *State v. Hinckley*, 198 Conn. 77, 90, 502 A.2d 388 (1985) (ineffective assistance of counsel claim predicated on counsel's requested jury instructions can only be addressed in collateral action because record provided no explanation for counsel's

actions and absent such information court is "unable to evaluate whether the performance of trial counsel was within the accepted range of competence"); *State v. Lopez*, 77 Conn. App. 67, 78–80, 822 A.2d 948 (2003) (ineffective assistance of counsel claim resulting from defense counsel's alleged failure to ensure that defendant understood and appreciated plea bargain offer cannot be brought on direct appeal because record inadequate), aff'd, 269 Conn. 799, 850 A.2d 143 (2004). Accordingly, we decline to review the defendant's claim and we leave the defendant to relief by way of a petition for a writ habeas corpus.

## II

The defendant next argues that his convictions for manslaughter in the first degree with a firearm and conspiracy to commit manslaughter in the first degree with a firearm deprived him of his right to notice under the sixth amendment to the United States constitution[15] because these crimes are not lesser included offenses, respectively, of murder and conspiracy to commit murder as charged in the information. We agree with the defendant that manslaughter in the first degree with a firearm is not a lesser included offense of murder as

[15] The sixth amendment to the United States constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ."

"We assume without deciding that an accused's sixth amendment right to notice of the charges against him is made applicable to the states through the due process clause of the fourteenth amendment. See, e.g., *State v. Scognamiglio*, 202 Conn. 18, 21, 519 A.2d 607 (1987) (referring to defendant's claim that he had no notice of the charges against him in violation of his rights under the sixth and fourteenth amendments to the United States constitution . . .); cf. *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S. Ct. 514, 92 L. Ed. 644 (1948) (referring to right to notice of specific charges as one guaranteed under fourteenth amendment due process clause without reference to sixth amendment in context of appeal from state prosecution). . . . But cf. *State v. Romero*, 269 Conn. 481, 503 n.23, 849 A.2d 760 (2004)." (Citation omitted; internal quotation marks omitted.) *State v. Gibson*, 270 Conn. 55, 58 n.2, 850 A.2d 1040 (2004).

charged in the information. We further conclude that conspiracy to commit manslaughter in the first degree with a firearm is not a cognizable offense under Connecticut law and, therefore, we need not consider whether such an offense would be a lesser included offense of conspiracy to commit murder.

The following additional facts and procedural history are necessary for our resolution of these claims. The defendant was charged by long form information with, inter alia, murder as an accessory in violation of General Statutes §§ 53a-54a (a)[16] and 53a-8 (a) and conspiracy to commit murder in violation of §§ 53a-48 (a) and 53a-54a (a). After the presentation of evidence at the defendant's trial, both the state and the defendant filed requests to charge the jury on lesser included offenses. The state filed a request to charge on manslaughter in the first degree with a firearm as an accessory in violation of §§ 53a-55a (a) and 53a-8, and the defendant filed a request to charge on reckless manslaughter in the first degree in violation of § 53a-55 (a) (3)[17] and reckless manslaughter in the second degree in violation of General Statutes § 53a-56 (a) (1).[18] The trial court informed the parties that it was going to charge the jury on manslaughter in the first degree with a firearm and on manslaughter in the second degree with a firearm "because the issue of whether . . . a firearm was involved is not in dispute . . . there is no factual issue, that if these

---

[16] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

[17] General Statutes § 53a-55 provides in relevant part: "(a) A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person. . . ."

[18] General Statutes § 53a-56 provides in relevant part: "(a) A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person . . . ."

people were injured, they were injured with a firearm, and there is no other way that that injury could occur . . . ." The defendant objected to the trial court's instruction on the firearm element, both before and after the jury charge, because he "had requested straight manslaughter lessers, and was given manslaughter with a firearm."

The trial court instructed the jury on murder and on the lesser included offenses of intentional manslaughter in the first degree with a firearm, reckless manslaughter in the first degree with a firearm and reckless manslaughter in the second degree with a firearm. The trial court also instructed the jury on conspiracy to commit murder and the lesser included offense of conspiracy to commit manslaughter in the first degree with a firearm. The jury acquitted the defendant of murder and conspiracy to commit murder, but found the defendant guilty of the lesser included offenses of intentional manslaughter in the first degree with a firearm and conspiracy to commit manslaughter in the first degree with a firearm.

As a preliminary matter, we set forth the appropriate standard of review. "Whether one offense is a lesser included offense of another presents a question of law. . . . Accordingly, our review is de novo." (Citations omitted.) *State* v. *Tomlin*, 266 Conn. 608, 615–16, 835 A.2d 12 (2003).

"The constitutionality of instructing on lesser included offenses is grounded on the premise that whe[n] one or more offenses are lesser than and included within the crime charged, notice of the crime charged includes notice of all lesser included offenses. . . . This notice permits each party to prepare a case properly, each cognizant of its burden of proof. . . .

"A defendant is entitled to an instruction on a lesser offense if . . . the following conditions are met: (1) an

appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant [not guilty] of the greater offense but guilty of the lesser. *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980). The defendant's claim that he was not afforded notice of the crime of which he was convicted implicates the second prong of *Whistnant*." (Citation omitted; internal quotation marks omitted.) *State* v. *Tomlin*, supra, 266 Conn. 616–17.

"The second prong of *Whistnant* derives from our earlier decision in *State* v. *Brown*, 163 Conn. 52, 301 A.2d 547 (1972). In *Brown*, we stated that [c]ourts have taken three approaches in determining whether a crime is a lesser included crime when the evidence would support a conclusion that the lesser crime was committed: (1) The included crime may be one consisting solely of elements which must always be present for the greater crime to have been committed; (2) it may be one consisting solely of elements which must have been present for the greater offense to have been committed in the manner described by the information or bill of particulars thereto; [or] (3) . . . it may be a crime which the evidence suggests and which could have been included in the information. The Connecticut rule on this question follows the second course . . . .

"That second course comprises the second prong in *Whistnant*, which encompasses the cognate pleadings approach. The cognate-pleadings approach . . . does

not insist that the elements of the lesser offense be a subset of the higher offense. It is sufficient that the lesser offense have certain elements in common with the higher offense, which thereby makes it a cognate or allied offense even though it also has other elements not essential to the greater crime. [In addition], the relationship between the offenses is determined not by a comparison of statutory elements in the abstract, but by reference to the pleadings in the case. The key ordinarily is whether the allegations in the pleading charging the higher offense . . . include all of the elements of the lesser offense." (Citation omitted; internal quotation marks omitted.) *State* v. *Tomlin,* supra, 266 Conn. 617–18.

## A

The first part of the defendant's claim requires us to determine whether manslaughter in the first degree with a firearm is a lesser included offense of murder. Under the cognate pleadings approach, manslaughter in the first degree with a firearm can be a lesser included offense of murder if the charging documents put the defendant on notice that the crime was committed by the use or threatened use of a firearm. See, e.g., id., 614, 618–21 (manslaughter in first degree with firearm lesser included offense of murder because information alleged that defendant " 'with intent to cause the death of [the victim] did shoot and cause the death of [the victim]' "); *State* v. *Rosario,* 82 Conn. App. 691, 698–99, 846 A.2d 926 (manslaughter in first degree with firearm lesser included offense of murder because information alleged that defendant had committed crime " 'by means of the discharge of the firearm' "), cert. denied, 270 Conn. 902, 853 A.2d 521 (2004); *State* v. *Ferreira,* 54 Conn. App. 763, 769–70, 739 A.2d 266 (Manslaughter in first degree with firearm is lesser included offense of murder because information alleged that "[t]he defendant, accompanied by two others, agreed to . . .

kill [the victim] by means of a deadly weapon. . . . The defendant and at least one other person . . . shot and killed [the victim] . . . ." [Internal quotation marks omitted.]), cert. denied, 251 Conn. 916, 740 A.2d 866 (1999). Thus, the relevant inquiry under the second prong of *Whistnant* is whether it is possible to commit the greater offense of murder, *as described in the information*, without first having committed the lesser offense of manslaughter in the first degree with a firearm.

The information alleged that "with intent to cause the death of another person by means of a firearm, [the defendant] intentionally aided another in causing the death of another . . . ." It is not apparent, from the information alone, that the crime was in fact committed by means of a firearm.[19] Although the information alleges that the defendant had the "intent to cause the death of another person by means of a firearm" and that he "aided another in causing the death of another,"

---

[19] The state claims that this court should read the information as a whole and should not restrict its examination of the information to the single count in question. Specifically, the state argues that the information was sufficient to put the defendant on notice that the crime was in fact committed by means of a firearm if the first count of the information, charging murder, is read conjunctively with the second count of the information, charging conspiracy to commit murder. We need not decide whether the information should be read as a whole because we conclude that even if the second count of the information is read in combination with the first, the information is still insufficient to put the defendant on notice that the crime was indeed committed by means of a firearm. The second count of the information alleges, in relevant part, that the defendant "with the intent that conduct constituting the crime of [m]urder be performed, agreed with one or more persons to engage in or cause the performance of such conduct by means of a firearm and any one of them committed an overt act in pursuance of such conspiracy . . . ." Although the second count alleges that the defendant "*intend[ed]*" and "*agreed*" with another that the crime of murder be performed by means of a firearm and that one of the conspirators "committed an *overt act* in pursuance of the conspiracy," it does not allege that the crime was in fact committed by means of a firearm. (Emphasis added.) Accordingly, we reject the state's argument.

it does not allege that either he or the principal used, were armed with, threatened the use of, displayed or represented by their words or conduct that they possessed a firearm during the commission of the crime. See General Statutes § 53a-55a (a); cf. *State* v. *Montanez*, 71 Conn. App. 246, 258–60, 801 A.2d 868 (manslaughter in first degree with firearm lesser included offense of murder because information alleged that defendant "with the intent to cause the death of [the victim], did intentionally aid his accomplice . . . who did *shoot* and cause the death of [the victim]" [emphasis added; internal quotation marks omitted]), cert. denied, 261 Conn. 935, 806 A.2d 1069 (2002). In other words, the defendant and the principal could have carried out the crime without a firearm and, thus, in a manner different from that intended by the defendant. The evidence produced at trial established that the crime was, in fact, committed by means of a firearm, but this court has expressly rejected the "evidence-test" and has limited the analysis of whether one offense is a lesser included offense of another to the information, bill of particulars and relevant statutes.[20] See, e.g., *State* v.

[20] The state claims that the information should be "construed liberally" and that "the allegation that the defendant intended to cause the death of another *by means of a firearm* is, at least for notice purposes, tantamount to an allegation that the instrumentality of death was a firearm." (Emphasis in original.) The state relies on *State* v. *McMurray*, 217 Conn. 243, 585 A.2d 677 (1991), in support of its argument. We disagree with the state and find *McMurray* to be distinguishable from the present matter.

In *McMurray*, the defendant argued, for the first time on appeal, that he was convicted under an information that omitted an essential element of the crimes of which he was convicted and that this omission violated his right to be informed of the nature and cause of the charges against him under the sixth and fourteenth amendments to the United States constitution. Id., 247–48. This court determined that "[w]hen reviewing a claim, *not raised prior to the verdict*, that an information fails to charge all the essential elements of an offense, we must construe the information liberally in favor of the state." (Emphasis added.) Id., 250. First, *McMurray* addresses the standard of review for constitutional notice claims that were *not raised prior to the verdict*. In the present matter, however, the defendant *twice* objected to the trial court's instruction on the lesser included offense of manslaughter in the first degree with a firearm prior to the verdict. Second,

*Brown*, supra, 163 Conn. 60–63 (trial court properly refused to charge on possession of narcotics, despite evidence of possession, because information merely alleged sale of narcotics); see also *State* v. *Guess*, 39 Conn. App. 224, 236–39, 665 A.2d 126 (manslaughter in first degree with firearm not lesser included offense of murder, despite evidence of use of firearm, because information did not allege use of firearm during commission of crime), cert. denied, 235 Conn. 924, 666 A.2d 1187 (1995); *State* v. *Falcon*, 26 Conn. App. 259, 262–66, 600 A.2d 1364 (1991) (same), cert. denied, 221 Conn. 911, 602 A.2d 10 (1992). Accordingly, we conclude that the trial court's instruction on manslaughter in the first degree with a firearm was improper and reverse the judgment of conviction for that offense.

We next address the appropriate remedy for the constitutional violation. The defendant claims that his judgment of conviction must be vacated. The state responds that the appropriate remedy is to remand the case to the trial court with direction to modify the judgment to reflect a conviction of manslaughter in the first degree in violation of § 53a-55 (a) (1) and to resentence the defendant. We agree with the state.

This court has modified a judgment of conviction after reversal, if the record establishes that the jury necessarily found, beyond a reasonable doubt, all of the essential elements required to convict the defendant of a lesser included offense. See, e.g., *State* v. *Carpenter*, 214 Conn. 77, 85, 570 A.2d 203 (1990) (vacating conviction for murder because of insufficient evidence of intent and modifying judgment to manslaughter in first degree), on appeal after remand, 220 Conn. 169, 595 A.2d 881 (1991), cert. denied, 502 U.S. 1034, 112 S. Ct.

*McMurray* is distinguishable from the present matter because it does not address the second prong of *Whistnant* or the trial court's instruction on lesser included offenses. Accordingly, the state's reliance on *McMurray* is misplaced.

877, 116 L. Ed. 2d 781 (1992);[21] *State* v. *McGann*, 199 Conn. 163, 178–79, 506 A.2d 109 (1986) (reversing conviction for capital felony because of insufficient evidence and modifying judgment to murder). Before the jury could find the defendant guilty of manslaughter in the first degree with a firearm, the jury necessarily must have found the defendant guilty of manslaughter in the first degree. See, e.g., *State* v. *Guess*, supra, 39 Conn. App. 239–40 (reversing judgment of manslaughter in first degree with firearm and modifying judgment to manslaughter in first degree because "[b]efore the jury could find the defendant guilty of manslaughter in the first degree with a firearm, it necessarily had to find the defendant guilty of manslaughter in the first degree"); *State* v. *Falcon*, supra, 26 Conn. App. 268. Therefore, the trial court's improper instruction could not have affected the jury's finding that the defendant was guilty, beyond a reasonable doubt, of the essential elements of manslaughter in the first degree under § 53a-55 (a) (1).

The defendant claims that under *State* v. *Martin*, 187 Conn. 216, 445 A.2d 585 (1982), the sole remedy for a sixth amendment violation is to vacate the judgment of conviction. We disagree. In *Martin*, the defendant was charged with sexual assault in the first degree in violation of General Statutes § 53a-70, but the jury acquitted him of that charge and found him guilty of

---

[21] The defendant argues that this court modified the judgment in *State* v. *Carpenter*, supra, 214 Conn. 85, because we determined that the evidence was insufficient to support the defendant's conviction and the double jeopardy clause of the constitution of the United States prevented a new trial. We are not persuaded. In *Carpenter*, we did not rely on the implications of the double jeopardy clause as the basis for our authority to modify the judgment, but rather held that "[b]ecause the jury's verdict necessarily includes a determination that . . . all the elements of [the lesser included offense] have been proven beyond a reasonable doubt, the defendant would not be prejudiced by a modification of the judgment to reflect a conviction of that charge." Id. Accordingly, we find this court's reasoning in *Carpenter* to be applicable to the present matter.

the lesser included offense of sexual assault in the third degree in violation of General Statutes § 53a-72a. Id., 217. This court held that under the charging documents and relevant statutes, sexual assault in the third degree was not a lesser included offense of sexual assault in the first degree because it was possible to commit the greater offense without necessarily having committed the lesser. Id., 220–21. Accordingly, we set aside the judgment and remanded the case to the trial court with direction to render judgment of acquittal on the charge of sexual assault in the first degree. Id., 223. We noted that the matter could not be remanded for a new trial because sexual assault in the third degree was not charged in the information. Id., 222–23. We did not preclude the possibility, however, that the defendant could be tried on sexual assault in the third degree under a new information. Id., 223 n.6. We conclude that *Martin* is distinguishable from the present case because the judgment in *Martin* did not encompass a proper judgment of conviction of a lesser included offense, as in the present matter. *Martin* does not suggest, as the defendant argues, that when the improper judgment necessarily encompasses a conviction on a lesser included offense, the sole remedy for a sixth amendment violation is to vacate the judgment of conviction. Accordingly, the defendant's reliance on *Martin* is misplaced.

Accordingly, we conclude that the defendant's judgment of conviction for manslaughter in the first degree with a firearm as an accessory should be reversed and that the case should be remanded to the trial court with direction to modify the judgment to reflect a conviction of the lesser included offense of manslaughter in the first degree as an accessory in violation of §§ 53a-55 (a) (1) and 53a-8 and to resentence the defendant in accordance with that conviction.

B

We now turn to the defendant's claim that his conviction of conspiracy to commit manslaughter in the first degree with a firearm violated his sixth amendment right to notice under the federal constitution because conspiracy to commit manslaughter in the first degree with a firearm is not a lesser included offense of conspiracy to commit murder as charged in the information. The state responds that we need not address the defendant's sixth amendment claim because conspiracy to commit manslaughter in the first degree with a firearm is not a cognizable offense under Connecticut law and, therefore, the defendant's conviction of the offense must be vacated. We agree with the state.

In *State* v. *Beccia*, 199 Conn. 1, 5, 505 A.2d 683 (1986), this court held that conspiracy to commit arson in the third degree in violation of General Statutes §§ 53a-48 and 53a-113 was not a cognizable offense under Connecticut law. We observed that "[c]onspiracy is a specific intent crime, with the intent divided into two elements: (a) the intent to agree or conspire and (b) the intent to commit the offense which is the object of the conspiracy. . . . To sustain a conviction for conspiracy to commit a particular offense, the prosecution must show not only that the conspirators intended to agree but also that they *intended to commit the elements of the offense*." (Emphasis in original; internal quotation marks omitted.) Id., 3–4. We further noted that "[t]he essential elements of the crime of arson in the third degree are the intentional starting of a fire or causing of an explosion thereby recklessly causing damage or destruction to a building." Id., 4. Thus, the arson statute proscribed reckless conduct and "one who acts recklessly does not have a conscious objective to cause a particular result." Id. We concluded that conspiracy to commit arson was not a cognizable offense because "conspirators cannot agree to accom-

plish a result recklessly when that result is an essential element of the crime . . . . There is just no such crime as would require proof that one intended a result that accidentally occurred. . . . It follows, therefore, that there is no such thing as a conspiracy to commit a crime which is defined in terms of recklessly or negligently causing a result." (Citations omitted; internal quotation marks omitted.) Id., 5.

Manslaughter in the first degree with a firearm, like arson, is a crime defined in terms of recklessly causing a result. "A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. . . ." General Statutes § 53a-55a (a). A person is guilty of manslaughter in the first degree in violation of § 53a-55 (a) (1) when "[w]ith intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ." We previously have held that manslaughter in the first degree in violation § 53a-55 (a) (1) is "committed without an intent to cause the death of another . . . [and] is analogous to the concept of involuntary manslaughter . . . ." (Citations omitted.) *State* v. *Almeda*, 189 Conn. 303, 308, 455 A.2d 1326 (1983), on appeal after remand, 196 Conn. 507, 493 A.2d 890 (1985).

Accordingly, we conclude that conspiracy to commit manslaughter in the first degree with a firearm is not a cognizable crime because it "requires a logical impossibility, namely, that the actor . . . [agree and] intend that an unintended death result." Id., 309 (crime of attempted manslaughter in violation of § 53a-55 [a] [1] does not exist under Connecticut law because one cannot logically attempt to bring about unintended result);

see also *State* v. *Toczko*, 23 Conn. App. 502, 505, 582
A.2d 769 (1990) (conspiracy to commit manslaughter
in first degree with firearm not cognizable crime); *State*
v. *Montgomery*, 22 Conn. App. 340, 344–45, 578 A.2d
130 (conspiracy to commit manslaughter in first degree
not cognizable crime), cert. denied, 216 Conn. 813, 580
A.2d 64 (1990). Therefore, we reverse the defendant's
judgment of conviction for conspiracy to commit man-
slaughter in the first degree with a firearm.

## III

Lastly, the defendant claims that the trial court
improperly permitted the introduction of hearsay state-
ments in violation of his right to confrontation under
the sixth amendment to the United States constitution.[22]
Specifically, the defendant argues that his conviction
for assault in the first degree with respect to the victim
George Harris was predicated on impermissible testi-
monial hearsay, namely, the testimony of two police
officers concerning Harris' statements about the shoot-
ing at Edgewood Avenue and Orchard Street and his
possible injury from a gunshot wound. We disagree.

The following additional facts and procedural history
are necessary for our resolution of this claim. The defen-
dant was convicted of, inter alia, assault in the first
degree of Harris in violation of §§ 53a-8 (a) and 53a-59
(a) (5). Harris did not testify at trial and, in order to
establish the defendant's guilt of the charged offense,
the state introduced the testimony of two police officers
and Harris' medical record from the night of October
12, 2001. At trial, New Haven police officer John Lalli

---

[22] "The sixth amendment to the United States constitution provides in
relevant part: 'In all criminal prosecutions, the accused shall enjoy the right
. . . to be confronted with the witnesses against him . . . .' The sixth
amendment right of confrontation is made applicable to the states through
the due process clause of the fourteenth amendment. See *Pointer* v. *Texas*,
380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965)." *State* v. *Rivera*,
268 Conn. 351, 358 n.8, 844 A.2d 191 (2004).

testified that he spoke with Harris on the night of the shooting and related their conversation as follows:

"[The Prosecutor]: All right. And did anyone approach you?

"[Lalli]: Yes.

"[The Prosecutor]: Who was that?

"[Lalli]: A black man, I believe his name was Mr. [Harris] who stated—he came up to me and said he thought he was shot in the foot, in the right foot, and there was a hole in his boot and he was grazed.

"[The Prosecutor]: Did you summon medical attention for him?

"[Lalli]: Yes, I did. I had the fire department come by and look at him and he declined to go to the hospital. He said he was going to go on his own because it didn't appear life-threatening or anything like that.

"[The Prosecutor]: He did not go in an ambulance at that time?

"[Lalli]: No, he did not.

"[The Prosecutor]: Did he indicate to you whether or not he was able to identify the people that did the shooting?

"[Lalli]: He said he heard the gunshots, but he didn't see anybody.

"[The Prosecutor]: Okay. And you may have already answered this, but did he say where he was on Orchard Street when he was struck?

"[Lalli]: No, you didn't ask me that. He said he was standing on the porch of his house of 135, I believe, Orchard, sitting on the front porch."

The defendant did not object to Lalli's testimony and declined to cross-examine him.

Additionally, New Haven police officer Matthew Merced testified that on the night of October 12, 2001, a police broadcast stated that a sixth victim had been injured in the shooting. Specifically, when asked by the state if any of the victims were removed from the scene of the crime by ambulance, Merced replied: "The sixth victim over the air another officer further down the street stated that the shooting victim was grazed in the foot and would transport himself to the [emergency room] and he later in the evening went to [Yale-New Haven] Hospital." The defendant did not object to Merced's testimony and did not cross-examine him concerning the sixth victim.

Harris' medical record from Yale-New Haven Hospital on the night of October 12, 2001, was also introduced into evidence. This record reports Harris' address as 435 Orchard Street in New Haven and articulates the following basis for his admittance to the hospital: "[thirty-three year old male] states he was sitting on his porch when he heard gun shots from opposite street corner and was struck in his foot. Unsure if bullet penetrated boot or not. [Patient] states he [indecipherable] . . . ." The hospital report indicates that Harris suffered a "gunshot wound to the foot" and notes that "[t]here is a bullet in the soft tissues on the undersurface of the first metatarsal."

The defendant concedes that his sixth amendment claim was not preserved at trial and seeks to prevail under *State* v. *Golding*, supra, 213 Conn. 239–40. We review the defendant's claim because the record is adequate for review and the claim is of constitutional magnitude. We conclude, however, that the defendant's claim fails under the third prong of *Golding*.

As an initial matter, we review the law governing out-of-court statements admitted for their truth in criminal trials. "An out-of-court statement offered to establish the truth of the matter asserted is hearsay. . . . As a general rule, such hearsay statements are inadmissible unless they fall within a recognized exception to the hearsay rule." (Internal quotation marks omitted.) *State* v. *Rivera*, 268 Conn. 351, 360, 844 A.2d 191 (2004).

"Beyond these general evidentiary principles, the state's use of hearsay evidence against an accused in a criminal trial is limited by the confrontation clause of the sixth amendment. In defining the specific limits of the confrontation clause, the United States Supreme Court consistently has held that the confrontation clause does not erect a per se bar to the admission of hearsay statements against criminal defendants. . . . At the same time, [a]lthough . . . hearsay rules and the [c]onfrontation [c]lause are generally designed to protect similar values, [the court has] also been careful not to equate the [c]onfrontation [c]lause's prohibitions with the general rule prohibiting the admission of hearsay statements. . . . The [c]onfrontation [c]lause, in other words, bars the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule." (Citation omitted; internal quotation marks omitted.) Id., 361–62.

Traditionally, for purposes of the confrontation clause, all hearsay statements of unavailable out-of-court declarants were admissible if the statements bore adequate indicia of reliability, i.e., "(1) the evidence [fell] within a firmly rooted hearsay exception or (2) it contain[ed] particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statements' reliability." (Internal quotation marks omitted.) *Lilly* v. *Virginia*, 527 U.S. 116, 124, 119 S. Ct. 1887, 144 L. Ed. 2d 117 (1999) (plurality opinion); see also *Ohio* v. *Roberts*, 448

U.S. 56, 66, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980). In *Crawford* v. *Washington*, 541 U.S. 36, 53–54, 62–63, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the "United States Supreme Court overruled *Roberts* to the extent that it applied to testimonial hearsay statements. . . . In *Crawford*, the court concluded that the reliability standard set forth in . . . the *Roberts* test is too amorphous to prevent adequately the improper admission of core testimonial statements that the [c]onfrontation [c]lause plainly meant to exclude. . . . The court held, therefore, that such *testimonial* hearsay statements may be admitted as evidence against an accused at a criminal trial only when (1) the declarant is unavailable to testify, and (2) the defendant has had a prior opportunity to cross-examine the declarant." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Rivera*, supra, 268 Conn. 362–63.

"In so concluding, the court drew a distinction between testimonial hearsay statements and those deemed nontestimonial. Where *nontestimonial* hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts*, and as would an approach that exempted such statements from [c]onfrontation [c]lause scrutiny altogether. . . . In other words, nontestimonial hearsay statements may still be admitted as evidence against an accused in a criminal trial if it satisfies . . . the *Roberts* test, irrespective of whether the defendant has had a prior opportunity to cross-examine the declarant." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 363.

"Although the court declined to define the terms testimonial and nontestimonial, it considered three formulations of th[e] core class of testimonial statements . . . . The first formulation consists of ex parte in-court testimony or its functional equivalent—that is, material such

as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially . . . . The second formulation consists of extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions . . . . Finally, the third formulation consists of statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial . . . . The court did not adopt any one particular formulation, noting that, [t]hese formulations all share a common nucleus and then define the [c]lause's coverage at various levels of abstraction around it. Regardless of the precise articulation, some statements qualify under any definition—for example, ex parte testimony at a preliminary hearing. . . . Similarly, [s]tatements taken by police officers in the course of interrogations are also testimonial under even a narrow standard. . . . Therefore, [w]hatever else the term [testimonial] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with the closest kinship to the abuses at which the [c]onfrontation [c]lause was directed."[23] (Citations omitted; internal quotation marks omitted.) Id., 363–64.

The defendant argues that the trial court improperly admitted the testimonial hearsay of Lalli and Merced in violation of the sixth amendment because the state did not establish the declarants'[24] unavailability and the

---

[23] The court declined to define the type of statements that are *not* testimonial in nature, but did note that "business records or statements in furtherance of a conspiracy" are not testimonial. *Crawford* v. *Washington,* supra, 541 U.S. 56.

[24] We note that two out-of-court declarants are implicated by Lalli and Merced's testimony. The first declarant is Harris whose statements were introduced at trial through the testimony of Lalli and Merced. The second

defendant did not have a prior opportunity for cross-examination. The state responds that the declarants' statements are not testimonial in nature.[25] We agree with the state.

Pursuant to *Crawford* v. *Washington*, supra, 541 U.S. 51–52, there are three types of testimonial statements: (1) ex parte in-court testimony or its functional equivalent; (2) extrajudicial statements contained in formalized testimonial materials; and (3) statements made under circumstances that would lead an objective witness reasonably to believe that the statements would be available for use at a later trial. As an initial matter, we conclude that Harris' statements do not fall within the first two categories of testimonial hearsay because there is no indication in the record, for example, that Harris was in custody or interrogated by the police or that his statements were formalized or memorialized in any way.[26] Accordingly, we turn to the third category

declarant is the unknown police officer who made an on-air broadcast concerning the medical status of the sixth victim and whose statements were introduced through Merced's testimony.

[25] The parties do not dispute that the relevant portions of the officers' testimony contained hearsay statements.

[26] The defendant claims that Harris' statements were formalized because they were made to the police. We reject this argument. In *Crawford* v. *Washington*, supra, 541 U.S. 51–52, the court stated that "extrajudicial statements . . . contained in *formalized testimonial materials*, such as affidavits, depositions, prior testimony, or confessions" are testimonial in nature. (Emphasis added; internal quotation marks omitted.) We conclude that this discrete category of "formalized testimonial materials" does not include *all* oral statements made to the police, regardless of factual context. See, e.g., *Fowler* v. *State*, 809 N.E.2d 960, 964 (Ind. App. 2004) (victim's statements made to police immediately after incident not testimonial because not given in formal setting or contained within formalized document of any kind).

The defendant, relying on *Crawford* v. *Washington*, supra, 541 U.S. 53 n.4 (court noted that it "use[d] the term 'interrogation' in its colloquial, rather than any technical legal, sense"), also claims that Harris' statements were the product of police interrogation because "*Crawford* intended the term interrogation to be read liberally, and to include any type of police interview reduced into a statement form." The record indicates, however, that Harris initiated the conversation with Lalli and does not reflect whether Lalli asked Harris any questions or whether Harris' comments were ever

of testimonial hearsay, whether Harris' statements were made under circumstances that would lead an objective witness reasonably to believe that the statements would be available for use at a later trial.

Under the circumstances of the present matter, we conclude that an objective witness reasonably would not believe that the statements would be available for use at a later trial. The record reflects that Lalli and Harris engaged in a brief exchange immediately after the shooting while Lalli was securing the crime scene. Harris approached Lalli and spontaneously reported that "he thought he was shot . . . in the right foot . . . ." Although Lalli summoned immediate medical attention, Harris informed Lalli that he would transport himself to the hospital because the injury did not seem life-threatening. Additionally, Lalli received information concerning Harris' address and whether Harris had seen or heard his assailants. It is unclear from the record whether Harris offered this information or whether it was voluntarily submitted in response to Lalli's questioning. Regardless, under these factual circumstances, where a victim contacts a police officer immediately following a criminal incident to report a possible injury and the officer receives information or asks questions to ensure that the victim receives proper medical attention and that the crime scene is properly secured, the victim's statements are not testimonial in nature because they can be "seen as part of the criminal incident itself, rather than as part of the prosecution that follows." *People* v. *Moscat*, 3 Misc. 3d 739, 746, 777 N.Y.S.2d 875 (2004) (victim's statements made during 911 call not testimonial); *State* v. *Forrest*, 164 N.C. App. 272, 280, 596 S.E.2d 22 (same), review denied, 359 N.C. 193, 607 S.E.2d 653 (2004). Thus, an objective witness reasonably would not believe that the statements would be

reduced to statement form. Accordingly, the record is inadequate for our review and the defendant's claim fails under the first prong of *Golding*.

available for use at a later trial.[27] See, e.g., *State* v. *Barnes*, 854 A.2d 208, 211–12 (Me. 2004) (victim's statements made immediately after crime not testimonial because [1] police did not seek victim out, [2] statements were made while victim was still under stress of assault; [3] victim did not make statements in response to structured police questioning but was instead seeking safety and aid; and [4] police did not have reason to believe, until statements were made, that there was any crime); *People* v. *Newland*, 6 App. Div. 3d 330, 331, 775 N.Y.S.2d 308 ("[w]e conclude that a brief, informal remark to an officer conducting a field investigation, not made in response to 'structured police questioning' . . . should not be considered testimonial" [citation omitted]), leave to appeal denied, 3 N.Y.3d 679, 817 N.E.2d 835, 784 N.Y.S.2d 17 (2004); see also *State* v. *Rivera*, supra, 268 Conn. 364–65 (statement made in confidence between family members not testimonial); but see *Moody* v. *State*, 277 Ga. 676, 680 n.6, 594 S.E.2d 350 (2004) (term "testimonial" in *Crawford* appears to apply to field investigations conducted by police). Accordingly, the victim's statements are not testimonial in nature[28] and the defendant's claim fails to satisfy the third prong of *Golding*.

---

[27] Similarly, we also conclude that the on-air broadcast statements of the unknown police officer, reporting that the sixth victim did not need an ambulance and would transport himself to the hospital, are not testimonial in nature. These statements were made at the crime scene immediately following the shooting and were part of internal police communications concerning the medical status of victims and the necessity for further medical assistance. Accordingly, an objective witness reasonably would not believe they would be introduced in a later trial.

[28] To the extent that the defendant argues that the hearsay statements in the present matter violated the requirements of the confrontation clause for the admission of *nontestimonial* hearsay; see *Lilly* v. *Virginia*, supra, 527 U.S. 124–25; *Ohio* v. *Roberts*, supra, 448 U.S. 66; we decline to review the defendant's claim because it is not adequately briefed. See *Knapp* v. *Knapp*, 270 Conn. 815, 823 n.8, 856 A.2d 358 (2004) ("We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an

The judgment of conviction of manslaughter in the first degree with a firearm as an accessory is reversed and the case is remanded to the trial court with direction to modify the judgment to reflect a conviction of manslaughter in the first degree as an accessory in violation of §§ 53a-8 (a) and 53a-55 (a) (1) and to resentence the defendant in accordance with that conviction. The judgment of conviction of conspiracy to commit manslaughter in the first degree with a firearm is reversed and the case is remanded to the trial court with direction to render a judgment of acquittal on that charge. The judgment is affirmed in all other respects.

In this opinion the other justices concurred.

issue by failure to brief the issue properly. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." [Citation omitted; internal quotation marks omitted.]).

