## STATE OF CONNECTICUT *v.* KEVIN GUESS
### (13321)

O'Connell, Heiman and Spear, Js.

Argued June 6—decision released September 12, 1995

*Donald J. Bowers*, with whom, on the brief, was *Sandra P. Lax*, for the appellant (defendant).

*John A. East III*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Cecilia Wiederhold*, assistant state's attorney, for the appellee (state).

O'CONNELL, J. The genesis of this case is a substitute information charging the defendant with murder in violation of General Statutes §§ 53a-54a and 53a-8, conspir-

acy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a, criminal attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2), 53a-8 and 53a-54a and carrying a pistol without a permit in violation of General Statutes §§ 29-28 and 29-35.

The jury returned a verdict of not guilty as to the charges of murder, conspiracy to commit murder and criminal attempt to commit murder, of guilty of what the court instructed were the lesser included offenses of manslaughter in the first degree with a firearm in violation of General Statutes §§ 53a-8 and 53a-55a and conspiracy to commit manslaughter in the first degree with a firearm in violation of §§ 53a-48 and 53a-55a, and of guilty of the charged offense of carrying a pistol without a permit.

The trial court subsequently granted the defendant's motion for judgment of acquittal of the lesser included offense of conspiracy to commit manslaughter in the first degree with a firearm.

The defendant appeals from the conviction of the lesser included offense of manslaughter in the first degree with a firearm and carrying a pistol without a permit.

The defendant claims that the trial court improperly (1) denied his motion to suppress tangible evidence, (2) denied his motion to suppress the statement he gave to the police, (3) denied his motion to sever his joint trial, and (4) denied his postjudgment motion for judgment of acquittal of the lesser included offense of manslaughter in the first degree with a firearm because there was insufficient evidence to support the conviction. We affirm in part and reverse in part.

The jury could reasonably have found the following facts. Throughout the day on May 31, 1991, shooting

erupted at the Quinnipiac Terrace housing project in New Haven as two rival gangs battled for control of the project's drug trade. While responding to a reported shooting at the project, investigating officers encountered sporadic gunfire. As police tried to defuse the situation, the defendant and a person later to be tried as the codefendant[1] concealed themselves behind a bush. One of the officers at the scene saw muzzle flashes from shots fired from behind the bush. One of these shots led to the death of Andre Moore, a member of one of the project's gangs.

Police recovered various nine millimeter and ten millimeter shell casings from behind the bush, including but not limited to Winchester brand nine millimeter casings. On June 5, 1991, police executed a search warrant for the defendant's apartment at 25 Donna Drive in New Haven. In the apartment, police found a Star nine millimeter semiautomatic pistol with live ammunition in the magazine, eight live rounds of ammunition, cash, records of drug transactions and a bulletproof vest. After procuring a second warrant, police searched the basement storage bin at 25 Donna Drive and found the following: a nine millimeter semiautomatic firearm, three boxes of nine millimeter ammunition, 23,000 empty small plastic bags and a quantity of cocaine. The defendant possessed neither state nor local permits to carry pistols or revolvers.

The fifteen Winchester shell casings found at the scene of the shooting had been ejected from the two weapons seized at the defendant's apartment. Moore was probably[2] killed by a Winchester brand bullet fired

---

[1] Sherman Edwards is a codefendant in this case, and has also appealed from his conviction. See State v. Edwards, 39 Conn. App. 242, 665 A.2d 611 (1995).

[2] At trial, the ballistics expert testified that, although badly deformed, the bullet recovered from the victim was "likely" to be a Winchester brand nine millimeter bullet.

from one of the fifteen Winchester shell casings found at the scene.

On November 30, 1991, the defendant gave a statement to police in which he admitted firing four nine millimeter shots from behind a bush during the shootout, but denied that he directly aimed his pistol at anyone. The defendant explained that one other individual had been with him behind the bush, but he repeatedly refused to identify that person. The defendant further told police that the second individual had fired a weapon, but that he could not identify the type of weapon used, how many shots had been fired from it, or at whom the shots had been aimed. Additional facts are included in the analyses of individual claims.

I

SEARCH WARRANT

The essence of the defendant's first claim is that the search warrant affidavit, based largely on facts supplied by confidential informants, did not support a conclusion of probable cause in violation of the fourth amendment of the United States constitution and article first, § 7, of the Connecticut constitution.

For a search warrant to issue, a neutral and detached judge must make an independent determination that the facts in the supporting affidavit constitute probable cause. *State* v. *Delmonaco*, 194 Conn. 331, 337, 481 A.2d 40, cert. denied, 496 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984). " 'Probable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . and (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched.' " *State* v. *Vincent*, 229 Conn. 164, 171, 640 A.2d 94 (1994), quoting *State* v.

*Weinberg,* 215 Conn. 231, 238, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990).

Under the fourth amendment to the federal constitution and article first, § 7, of our state constitution, the "totality of the circumstances" test is used to determine if there is probable cause to issue a search warrant that is based on the information of confidential informants. *Illinois* v. *Gates,* 462 U.S. 213, 233, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *State* v. *Zarick,* 227 Conn. 207, 222, 630 A.2d 565, cert. denied, 510 U.S. 1025, 114 S. Ct. 637, 126 L. Ed. 2d 595 (1993); *State* v. *Barton,* 219 Conn. 529, 544–45, 594 A.2d 917 (1991). When a search warrant affidavit is based on information provided to the police by a confidential informant, the magistrate must examine the affidavit to determine whether it adequately describes both the factual basis of the informant's knowledge and the basis for the belief that the information is reliable. Where the bases for crediting the source of the information are apparent, and when a magistrate has in fact found probable cause, the reviewing court will not invalidate a warrant by applying rigid analytical categories. *State* v. *Barton,* supra, 544–45. Rather, we review an issuing judge's determination that probable cause existed by considering the information before the judge "at the time of the issuance of the warrant, together with the reasonable inferences drawn from such information, in the light most favorable to the issuing judge's determination of probable cause." *State* v. *Zarick,* supra, 222; *State* v. *Johnson,* 219 Conn. 557, 565, 594 A.2d 933 (1991).

The challenged affidavit in this case clearly provided a substantial factual basis from which the issuing judge could have reasonably inferred that nine millimeter guns were located in the defendant's apartment and that the defendant was himself connected to the shooting of Moore. Police drafted a thoroughly detailed search

warrant based on the data supplied to them by two known confidential informants, each of whom had previously provided reliable, accurate information to the police.

The first informant telephoned the police each day with information relating to gang activity in the Quinnipiac Terrace projects. During the week of June 3, 1991, he informed the police that he had observed the defendant in possession of nine millimeter firearms at his residence, had personally observed the defendant storing various firearms at 126 Olive Street, and had been told by the defendant that Moore's death was a result of a shootout involving the defendant's gang.

The second informant, a gang member who had been working for the New Haven police department for more than six months, also provided information regarding the shooting death of Moore. That informant not only corroborated each piece of information supplied by the first informant, but also told police that he was present when the defendant admitted personal responsibility for the death of Moore.

In addition to relying on the tips supplied by the confidential informants, the officers also independently ascertained that both nine millimeter and ten millimeter shell casings were found at the scene of the shooting. They further consulted an agent of the federal Bureau of Alcohol Tobacco and Firearms to confirm that the types of weapons allegedly located at the defendant's apartment were capable of firing nine millimeter cartridges.

The trial court found that the reliability of each informant was amply demonstrated because each informant confirmed the information of the other, and because the remainder of the information was based on personal knowledge and police investigation. The warrant affidavit adequately described both the factual basis of the informants' knowledge and the basis on which the

police concluded that the information was reliable. The trial court considered details provided by the confidential informants and the information yielded by independent police investigation.

We conclude that the trial court properly determined that the affidavit provided a substantial factual basis for its finding that there was probable cause to believe that the defendant was involved in Moore's shooting and that evidence of that crime was located at the defendant's residence.

## II

## STATEMENT

The defendant next raises the issue of whether his confession was obtained without a waiver of his *Miranda*[3] rights in violation of the fifth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. Because the defendant did not advance a separate state constitutional argument, we will limit our analysis to federal constitutional grounds.

The purpose of the *Miranda* warnings is to assure that a confession is the product of an "essentially free and unconstrained choice by its maker." (Internal quotation marks omitted.) *State* v. *Madera*, 210 Conn. 22, 48, 554 A.2d 263 (1989). Waiver must be "an intentional relinquishment or abandonment of a known right or privilege." *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). " '[C]ourts indulge every reasonable presumption against waiver' . . . 'and do not presume acquiescence in the loss of fundamental rights.' " Id. To be valid, a waiver of the *Miranda* rights must be " 'voluntary, knowing, and intelligent.' " *State* v. *Stanley*, 223 Conn. 674, 686, 613 A.2d 788 (1992).

---

[3] *Miranda* v. *Arizona*, 384 U.S. 436, 467–73, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

An effective waiver presupposes full knowledge of the right or privilege allegedly waived as well as some act done knowingly to relinquish it. *State* v. *Ramos*, 201 Conn. 598, 603, 519 A.2d 9 (1986). In considering the validity of the waiver, the reviewing court looks, as does the trial court, to the totality of the circumstances surrounding the claimed waiver. *State* v. *Madera*, supra, 210 Conn. 49. Factors used to assess the totality of the circumstances for capacity for intelligent and voluntary waiver include: age of the accused; lack of education; lack of advice of constitutional rights; and the length and nature of the interrogation. *State* v. *Toste*, 198 Conn. 573, 584, 504 A.2d 1036 (1986). " '[O]ur usual deference to fact-finding by the trial court is qualified, on questions of this nature, by the necessity for a scrupulous examination of the record to ascertain whether such a factual finding is supported by substantial evidence.' " *State* v. *Stanley*, supra, 223 Conn. 686.

The defendant claims that he was incapable of understanding his rights as read to him because he was "shook up" from being arrested. Our examination of the record and the factors used to assess the totality of the circumstances leads us to conclude that the defendant's waiver in this case was made knowingly, voluntarily and intelligently.

At the suppression hearing, the state presented the following evidence. After being read the *Miranda* rights twice, the defendant signed a card waiving those rights.[4] The state then produced a transcript of an orally recorded confession in which the defendant said that he had been twice informed of his *Miranda* rights. At no time before or during the interrogation did the defendant, a college student, indicate that he did not.

---

[4] Although the card was misplaced and therefore not entered into evidence, the trial judge credited the testimony of the officer who witnessed the defendant signing the card.

understand the rights as presented to him, nor did he request that the rights be explained. The defendant did not attempt to exercise his right to remain silent or his right to obtain counsel. Viewed in the totality of the circumstances, the defendant's claim that he did not understand his rights as read to him is without merit.

From our review of the record, we conclude that the trial court correctly found substantial evidence that the defendant's statement was given pursuant to a valid waiver, and was not obtained in violation of his fifth and fourteenth amendment rights.

## III

## SEVERANCE

The defendant next claims that the trial court improperly denied his motion to sever his trial from that of his codefendant, Sherman Edwards. We do not agree with the defendant.

"Ordinarily justice is better subserved where the parties [jointly informed against] are tried together." *State* v. *Walton*, 227 Conn. 32, 56, 630 A.2d 990 (1993). A joint trial is preferred because it "expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids the necessity of recalling witnesses who would otherwise be called to testify [more than] once." *Parker* v. *United States*, 404 F.2d 1193, 1196 (9th Cir. 1968).

Notwithstanding the state's interest in joint trials, severance is appropriate "where the defenses of the accused are antagonistic, or evidence will be introduced against one which will not be admissible against others,

and it clearly appears that a joint trial will probably be prejudicial to the rights of one or more of the accused." (Internal quotation marks omitted.) *State* v. *Smith*, 201 Conn. 659, 669, 519 A.2d 26 (1986). "[T]he phrase prejudicial to the rights of the parties means something more than that a joint trial will probably be less advantageous to the accused than separate trials." (Internal quotation marks omitted.) *State* v. *Walton*, supra, 227 Conn. 56.

The trial court enjoys discretion in determining whether to sever the trials of defendants involved in the same criminal incident. Practice Book § 829;[5] *State* v. *Vinal*, 198 Conn. 644, 649, 504 A.2d 1364 (1986). The standard for the trial court is " 'whether substantial injustice is likely to result unless a separate trial be accorded. The test for this court [on appeal] is whether the denial of the motion for a separate trial has resulted in substantial injustice to the accused.' " *State* v. *Smith*, supra, 201 Conn. 671. Because the trial court enjoys wide latitude in determining whether substantial injustice is likely to result if separate trials are not ordered, this court "will reverse a trial court's ruling on joinder only where the trial court commits an abuse of discretion that results in manifest prejudice to one or more of the defendants." *State* v. *Vinal*, supra, 649; *State* v. *Burns*, 23 Conn. App. 602, 608, 583 A.2d 1296 (1990).

The defenses asserted by the codefendants here are not antagonistic. Defenses offered by codefendants at a joint trial are sufficiently antagonistic to mandate separate trials where a jury can reasonably accept the core of the defense offered by one defendant only if it rejects the core of the defense offered by the codefen-

---

[5] Practice Book § 829 provides: "The judicial authority may, upon his own motion or the motion of any party, order that two or more indictments or informations or both, whether against the same defendant or different defendants, be tried together."

dant. *State* v. *Vinal*, supra, 198 Conn. 652. The defendant in the present case argued that, although he fired a gun at the crime scene, he did not aim at the victim and thus lacked the requisite intent for murder. Edwards asserted an alibi defense. The defenses presented by the codefendants, although different, were not antagonistic. The jury was, therefore, not in the position of accepting the defense of one defendant only by rejecting the defense of the other.

The defendant was not prejudiced by evidence that was admissible against the codefendant but not against him. In this case, the *only* evidence presented that would not have been admissible against the defendant had he been tried alone was that one witness claimed to recognize the codefendant from jail. The admission of this sole piece of evidence did not result in substantial injustice so as to require a separate trial.

The defendant contends that he suffered irreparable prejudice because the evidence was too complex for the jury to separate it as to each defendant. To illustrate this prejudice, he points to the fact that the court did not give identical jury charges with respect to each codefendant. The defendant received the lesser included offense instructions that he requested, and the codefendant, who requested no lesser included offense instructions, received the lesser included offense instructions that the court thought appropriate. *State* v. *Rodriguez*, 180 Conn. 382, 407–408, 429 A.2d 919 (1980).

In the absence of a clear indication to the contrary, juries are presumed to follow the instructions that they are given. *State* v. *Negron*, 221 Conn. 315, 331, 603 A.2d 1138 (1992). Throughout the trial and in its charge, the court specifically instructed the jury to consider each case separately and independently. There is no evidence in the record before us that the jury was confused by

the separate charges or unable to separate the evidence relating to each codefendant.

The trial court did not abuse its discretion in finding that no substantial injustice was likely to result from a joint trial of the two defendants. Accordingly, the motion to sever was properly denied.

## IV

## LESSER INCLUDED OFFENSE

The defendant's final claim concerns the sufficiency of the evidence to support a conviction of manslaughter in the first degree with a firearm. Before addressing that claim, we must first address the threshold question of whether, under the facts of this case, manslaughter in the first degree with a firearm is a lesser included offense of murder as charged. At oral argument, we raised this question sua sponte[6] and discuss it now under the plain error doctrine.

" '[P]lain error review is limited to instances involving confidence in the fairness and integrity of the adjudicative process . . . the doctrine essentially invokes the discretion of the court.' *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 196, 520 A.2d 208 (1987)." (Citation omitted.) *State* v. *Rogers*, 18 Conn. App. 104, 110–11, 556 A.2d 1830 (1989). The doctrine allows an appellate court "in the interests of justice [to] notice plain error not brought to the attention of the trial court." Practice Book § 4185. The plain error principle may also be invoked when the " 'existence of the error is so obvious

---

[6] The parties were ordered to file supplemental briefs to address the following inquiries: "(1) is the crime of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a a lesser included offense of the crime of murder in violation of General Statutes § 53a-54a as charged in the information in light of the doctrine of *State* v. *Whistnant*, 179 Conn. 576, 427 A.2d 414 (1980), and (2) if the answer is no, what relief shall be afforded to the defendant?" Compare *Lynch* v. *Granby Holdings, Inc.*, 230 Conn. 95, 98–99, 644 A.2d 325 (1994).

that it affects the fairness and integrity of and public confidence in the judicial proceedings . . . and results in an unreliable verdict or miscarriage of justice.' " (Citations omitted; internal quotation marks omitted.) *State* v. *Harvey*, 27 Conn. App. 171, 187, 605 A.2d 563, cert. denied, 222 Conn. 907, 608 A.2d 693 (1992).

" 'Nothing is more elementary in criminal law than that an accused is required to defend only against the charge alleged.' " *State* v. *Belton*, 190 Conn. 496, 501, 461 A.2d 973 (1983). The information serves the crucial function of alerting the defendant to the nature of the accusations against him as required by our federal and state constitutions. U.S. Const., amend. VI; Conn. Const., art. I, § 8; *State* v. *Belton*, supra, 501.

When determining whether one crime is a lesser included offense of another crime, the reviewing court must consider whether "it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser . . . ." *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980). Proof of a lesser included offense must not require proof of any element that is not needed to commit the greater offense. *State* v. *Castro*, 196 Conn. 421, 429, 493 A.2d 223 (1985).

In this case we must determine whether it was possible for the defendant to commit murder in the manner described in the information without having first committed manslaughter in the first degree with a firearm. To make this determination, we examine both the relevant statutes and the charging documents. *State* v. *Falcon*, 26 Conn. App. 259, 265, 600 A.2d 1364, cert. denied, 211 Conn. 911, 602 A.2d 10 (1992). The state urges us to consider counts two and three of the information, both of which refer to the firing of shots from a handgun. The state also asks us to consider the probable cause hearing in which the court found probable cause to

believe that the defendant shot the victim. We cannot do so, however, because notice of the crime charged in the information is what determines "notice of all lesser included offenses." Id., 264. Specific mention of use of a firearm in other counts of the information and at the probable cause hearing, while alerting the defendant to possible presentation of evidence at trial, does not provide the defendant with notice that he could be convicted of a crime that is not properly a lesser included offense under *Whistnant*.

In the present case, count one of the substitute information charged the defendant with murder by alleging that the defendant "with intent to cause the death of another person, did cause the death of Andre Moore in violation of § 53a-54a (a) of the Connecticut General Statutes."[7] Count one, however, did not contain an allegation that the defendant used a firearm in the commission of that crime. Because the crime of manslaughter in the first degree with a firearm requires proof of the additional element of use of a firearm, which is not a necessary element of the crime of murder *as charged in the information,* the defendant could not be lawfully convicted of manslaughter in the first degree with a firearm.[8]

We addressed this issue in *State* v. *Falcon,* supra, 26 Conn. App. 259, a case factually similar to the present

---

[7] General Statutes § 53a-54a (a) provides in pertinent part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

[8] General Statutes § 53a-55a (a) provides: "A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. No person shall be found guilty of manslaughter in the first degree and manslaughter in the first degree with a firearm upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information."

case. The defendant in *Falcon* was charged with murder. The information contained no allegation of use of a firearm. After examining the relevant statutes and the charging document, we held that it was possible for the defendant to commit murder as charged without first having committed manslaughter in the first degree with a firearm. Thus, manslaughter in the first degree with a firearm was not a lesser included offense of murder.

Our decision today does not mean that manslaughter in the first degree with a firearm can never be a lesser included offense of murder. Under the facts of two cases, our Supreme Court has found that manslaughter in the first degree with a firearm is a lesser included offense of murder. *State* v. *Shipman*, 195 Conn. 160, 486 A.2d 1130 (1985); *State* v. *Marino*, 190 Conn. 639, 462 A.2d 1021 (1983). In both *Shipman* and *Marino*, however, the defendant was charged with murder by charging documents that *expressly* stated that the crime was committed by the use of a firearm. The information in this case contains no such allegation and therefore does not give the defendant the requisite notice for lesser included offense purposes.

Because we conclude that the defendant cannot be convicted of manslaughter in the first degree with a firearm, we turn to the issue of the disposition of the appeal. Our Supreme Court and this court have modified judgments after a reversal rather than remanding for a new trial. *State* v. *Carpenter*, 214 Conn. 77, 85, 570 A.2d 203 (1990); *State* v. *Falcon*, supra, 26 Conn. App. 267. In those cases, the courts had rendered judgments for crimes that were *necessarily* included in the jury's determination. In this case, as in *Falcon*, the improper instruction, and resulting conviction, implicated the jury's finding only as to the use of a firearm. Before the jury could find the defendant guilty of manslaughter in the first degree with a firearm, it necessarily

had to find the defendant guilty of manslaughter in the first degree. The trial court clearly provided the jury with an explanation of all the elements of manslaughter in the first degree. General Statutes § 53a-55 (a) (1).[9] Manslaughter under § 53a-55 (a) (1) is a lesser included offense of murder. *State* v. *Maselli*, 182 Conn. 66, 71, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981).

We next consider the question of whether the evidence is sufficient to support a judgment of conviction of manslaughter in the first degree. In reviewing claims of insufficiency, this court first reviews the evidence presented at trial and construes it in the light most favorable to sustaining the verdict. *State* v. *Stanley*, supra, 223 Conn. 677–78. We then look at the facts established at trial and the inferences reasonably drawn therefrom, and decide whether the jury could have reasonably concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. Id.

In order to be convicted of manslaughter in the first degree in violation of § 53a-55 (a) (1), the defendant must, with the intent to cause serious physical injury to another person, cause the death of such person or a third person. See footnote 10. The element of intent is ordinarily proved by circumstantial evidence and must usually be inferred from the defendant's conduct and the surrounding circumstances. *State* v. *Smith*, 35 Conn. App. 51, 63, 644 A.2d 923 (1994). "[I]ntent to cause [serious physical injury] may be inferred from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to and immedi-

---

[9] General Statutes § 53a-55 (a) provides in pertinent part: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ."

ately following the death [of the victim].' " (Internal quotation marks omitted.) *State* v. *Carpenter,* supra, 214 Conn. 82–83, quoting *State* v. *Patterson,* 213 Conn. 708, 721, 570 A.2d 174 (1990). Although not required to do so, a jury is permitted to infer that a defendant intended the natural consequences of his voluntary conduct. *State* v. *Stanley,* supra, 223 Conn. 679.

On the basis of the evidence presented and the inferences reasonably drawn therefrom, the jury reasonably could have concluded beyond a reasonable doubt that the defendant intended to cause serious physical injury to the victim. The state presented witnesses who established that the defendant had a motive to shoot the victim, a rival gang member. The defendant admitted that he concealed himself behind the bush, from which location the shots were fired. Two eyewitnesses testified that they observed the defendant fire his gun *at* the victim. A police officer testified that he saw the muzzle flashes of gunfire erupt from behind the bush toward the victim. The defendant admitted to firing four shots from behind the bush, but denied aiming at the victim. It was uncontested that the defendant's gun fired ammunition identical to that which caused the victim's death.

The defendant attacks the credibility of these witnesses and points out that there are inconsistencies in their testimony. Our criminal jurisprudence does not mandate that a jury accept a defendant's version of events. Rather, "[t]he jury is free to juxtapose conflicting versions of events and to determine which is the more credible." *State* v. *Adams,* 225 Conn. 270, 278, 623 A.2d 42 (1993). The reviewing court does not "sit as a thirteenth juror . . . [but rather defers] to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor, and attitude." (Citation omitted; internal quotation marks omitted.) *State* v. *Henning,* 220 Conn. 417, 420,

599 A.2d 1065 (1991). In performing its function, the jury was free to disbelieve the defendant's statement and credit other witnesses' testimony. The state produced sufficient evidence to prove the elements of manslaughter in the first degree.

The judgment of conviction of manslaughter in the first degree with a firearm is reversed and the case is remanded to the trial court with direction to render a judgment of conviction of manslaughter in the first degree in violation of § 53a-55 (a) (1) and to resentence the defendant in accordance with that conviction; the judgment of conviction of carrying a pistol without a permit is affirmed.

In this opinion the other judges concurred.

