STATE OF CONNECTICUT *v.* MICHAEL A.[1]
(AC 25834)

DiPentima, Rogers and Pellegrino, Js.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom her identity may be ascertained. See General Statutes § 54-86e.

252

Argued September 13, 2006—officially released January 23, 2007

*Donald D. Dakers*, special public defender, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *Kevin D. Lawlor*, state's attorney, and *Mary M. Galvin*, former state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Michael A., appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1)[2] and risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[3] The defendant raises the following four claims on appeal: (1) he was denied his constitutional right to notice of the charges against him when the trial court improperly instructed the jury that it could consider the crime of sexual assault in the second degree as a lesser offense included within sexual assault in the first degree; (2) the court improperly instructed the jury on the elements of risk of injury to a child; (3) the court improperly permitted the state to introduce evidence of the defendant's prior misconduct; and (4) the court improperly admitted expert testimony concluding that

---

[2] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such person . . . ."

[3] General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . ."

a sexual assault actually had occurred.[4] We agree with the defendant on his first instructional claim, and therefore reverse the judgment of the trial court only as to his conviction of sexual assault in the second degree.

The jury reasonably could have found the following facts. The victim, a fourteen year old high school freshman, resided across the street from the defendant's family and knew the defendant as her boyfriend's father. On the evening of November 29, 2000, the victim encountered the defendant standing outside his apartment building. He called her over, ostensibly for the purpose of talking to her about his son. The victim followed the defendant into an apartment rented by the defendant's sister, which was vacant but for a mattress in the middle of the living room. The defendant positioned himself between the victim and the front door and asked her what she would do if he kissed her, to which the victim replied, "stop playing, Mike." The defendant then proceeded to kiss the victim and to remove her jacket, her pants and her underpants. The victim testified that she did not want this to happen but that she did not fight the defendant or try to stop him because she was very frightened. The defendant laid the victim on the mattress and had sexual intercourse with her. The victim said no, told the defendant that it hurt her and told him to stop, but he did not stop. She could not move because the defendant overpowered her with his weight. After the defendant was finished, he walked the victim to the door and said,

---

[4] In his brief, the defendant raises two additional sentencing claims. His fifth claim is that his sentence for having been convicted of risk of injury to a child exceeded the statutory maximum permitted at the time the offense was committed. His sixth claim is that if this court reverses the conviction of sexual assault in the second degree but affirms the conviction of risk of injury to a child, the sentence may not be enhanced as a result of the defendant's plea to being a persistent serious felony offender. On September 13, 2006, the defendant's counsel waived those final two claims at oral argument.

"you aren't going to tell anybody, right?" The victim returned home and called the defendant's son. She also told her best friend, T, other friends at school and, eventually, the school authorities, including the police officer at her school. Thereafter, the state charged the defendant with sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1)[5] and risk of injury to a child in violation of § 53-21 (a) (2). On May 26, 2004, the state filed a substitute part B information charging the defendant with being a persistent serious felony offender as provided in General Statutes § 53a-40 (c).[6] In June, 2004, the jury found the defendant not guilty of sexual assault in the first degree but guilty of sexual assault in the second degree and risk of injury to a child. Following the jury verdict, the defendant pleaded nolo contendere to the part B information, which was conditioned on his right to challenge the underlying conviction. On August 23, 2004, the court, *Cremins, J.*, rendered judgment in accordance with the jury verdict and sentenced the defendant to a total effective term of twenty-four years imprisonment followed by ten years special probation and lifetime registration as a sex offender.[7] This appeal followed. Additional facts will be set forth as needed.

[5] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[6] General Statutes § 53a-40 (c) provides: "A persistent serious felony offender is a person who (1) stands convicted of a felony, and (2) has been, prior to the commission of the present felony, convicted of and imprisoned under an imposed term of more than one year or of death, in this state or in any other state or in a federal correctional institution, for a crime. This subsection shall not apply where the present conviction is for a crime enumerated in subdivision (1) of subsection (a) of this section and the prior conviction was for a crime other than those enumerated in subsection (a) of this section."

[7] The court, applying General Statutes § 53a-40 (j), sentenced the defendant to twelve years imprisonment followed by five years special parole on

I

The defendant raises two instructional claims. "When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety . . . and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party . . . ." (Internal quotation marks omitted.) *State* v. *Romero*, 269 Conn. 481, 488, 849 A.2d 760 (2004).

A

The defendant first claims that the court improperly instructed the jury that it could find him guilty of sexual assault in the second degree as a lesser offense included within sexual assault in the first degree. We agree with the defendant.

The defendant was charged by substitute long form information with one count of sexual assault in the first degree in violation of § 53a-70 (a) (1) and one count of risk of injury to a child in violation of § 53-21 (a) (2). With respect to the first count, the information charged that the defendant had "engaged in sexual intercourse, to wit: vaginal intercourse, with another person, by the use or threat of use of force against such other person which reasonably caused such person to fear physical injury to such person . . . ." With respect to the second count, the information charged that the defendant "had contact with the intimate parts of a child under the age of sixteen years, or subjected a child under sixteen years of age to contact with his intimate parts, in a sexual or indecent manner likely to impair the health

the conviction of sexual assault in the second degree and a consecutive term of twelve years imprisonment followed by five years special parole on the conviction of risk of injury to a child.

or morals of such child . . . ."[8] At the close of evidence, the state filed a request to charge on the lesser included offense of sexual assault in the second degree, which the court granted. During its final argument, the state presented the lesser included offense as an alternative to sexual assault in the first degree, to which defense counsel did not object. The court then instructed the jury on sexual assault in the second degree, to which defense counsel did not take an exception. The jury ultimately found the defendant not guilty of sexual assault in the first degree but found him guilty of sexual assault in the second degree and risk of injury to a child.

Although the defendant concedes that his claim is unpreserved, he seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[9] We agree that the claim is reviewable because the record is adequate, and if the defendant was convicted of a crime for which he was not given proper notice, he was deprived of due process of law. See *State* v. *Tomlin*, 266 Conn. 608, 616, 835 A.2d 12 (2003).

The question of whether sexual assault in the second degree is a lesser offense included within the crime of sexual assault in the first degree is a question of law

---

[8] The defendant filed a motion for a bill of particulars on September 16, 2003, asking for, inter alia, the name of the alleged victim. In response, the state filed this long form information, which did not provide any additional details as to the identity or age of the victim.

[9] Under the *Golding* standard, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40; see also *State* v. *Whitford*, 260 Conn. 610, 621, 799 A.2d 1034 (2002) (first two prongs of *Golding* involve determination of whether claim reviewable; second two involve determination of whether defendant can prevail).

and therefore subject to de novo review. Id., 615–16. We begin our analysis of the defendant's claim by reviewing the law regarding lesser included offenses.

"A criminal defendant has a constitutional right to be informed of the nature and cause of the charges against him with sufficient precision to enable him to meet them at trial." (Internal quotation marks omitted.) *State* v. *Ward*, 76 Conn. App. 779, 787, 821 A.2d 822, cert. denied, 264 Conn. 918, 826 A.2d 1160 (2003); see also *State* v. *Rosario*, 82 Conn. App. 691, 695, 846 A.2d 926, cert. denied, 270 Conn. 902, 853 A.2d 521 (2004). This notice is accomplished through the state's charging documents and, particularly, the information. "The information serves the very important function of informing the defendant of the nature and cause of the accusation as required by our federal and state constitutions." (Internal quotation marks omitted.) *State* v. *Ward*, supra, 787. A court, however, may instruct the jury to consider lesser included offenses of crimes alleged in the charging document because it is assumed that "whe[n] one or more offenses are lesser than and included within the crime charged, notice of the crime charged includes notice of all lesser included offenses. . . . This notice permits each party to prepare a case properly, each cognizant of its burden of proof." (Internal quotation marks omitted.) *State* v. *Rosario*, supra, 695.

The test governing lesser included offenses is well settled. For one offense to be included within another, it must not be "possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser . . . ." *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980); *State* v. *Greene*, 274 Conn. 134, 158, 874 A.2d 750 (2005), cert. denied, 548 U.S. 926, 126 S. Ct. 2981, 165 L. Ed. 2d 988 (2006). This inquiry is governed by the cognate pleadings approach. *State* v. *Tomlin*,

supra, 266 Conn. 618. "The cognate-pleadings approach . . . does not insist that the elements of the lesser offense be a subset of the higher offense. It is sufficient that the lesser offense have certain elements in common with the higher offense, which thereby makes it a cognate or allied offense even though it also has other elements not essential to the greater crime. [In addition], the relationship between the offenses is determined not by a comparison of statutory elements in the abstract, but by reference to the pleadings in the case. The key ordinarily is whether the allegations in the pleading charging the higher offense . . . include all of the elements of the lesser offense." (Internal quotation marks omitted.) Id.

The defendant argues that sexual assault in the second degree is not a lesser offense included within sexual assault in the first degree because each crime requires proof of an element that the other does not. Sexual assault in the first degree requires that sexual intercourse be accomplished by force or threat of force but has no age requirement for the victim. Sexual assault in the second degree does not require force or threat of force but does require that the victim be between the ages of thirteen and sixteen years at the time of the offense and further requires that the accused be more than two years older than the victim. The state responds that this court should consider the second count of the information, charging the defendant with risk of injury to a child. According to the state, because this count requires the victim to be younger than sixteen years of age, the defendant was on notice as to the additional element of sexual assault in the second degree. We agree with the defendant that in this case, sexual assault in the second degree was not a lesser offense included within sexual assault in the first degree.

"The crime of sexual assault in the second degree is an offense separate and distinct from sexual assault in

the first degree." *State* v. *Franko*, 199 Conn. 481, 495, 508 A.2d 22 (1986). Consequently, we turn to the information and bill of particulars to determine whether it would be possible to commit sexual assault in the first degree *in the manner described* in those documents, without necessarily committing sexual assault in the second degree. The state's first count on the long form information simply charged the defendant with accomplishing sexual intercourse by use or threat of force. It neither identified the victim nor referenced her age. Because age is an element of sexual assault in the second degree but not of sexual assault in the first degree, the defendant clearly could have accomplished the latter without committing the former.

The state asks us to overrule our holding in *State* v. *Guess*, 39 Conn. App. 224, 665 A.2d 126, cert. denied, 235 Conn. 924, 666 A.2d 1187 (1995), and look to the other counts alleged in the information to determine whether the defendant had adequate notice of the charges against him.[10] We decline the state's invitation to do so.

In *Guess*, the defendant was charged with, inter alia, murder and carrying a pistol without a permit. The court instructed the jury that it could consider the lesser included offense of manslaughter in the first degree with a firearm. Id., 226. On appeal, we raised the question, sua sponte, whether that instruction constituted a violation of the defendant's constitutional right to notice of the charges against him. Id., 236. The state

---

[10] The state argues that because this is a constitutional notice claim not raised prior to the verdict, we should construe the information liberally in favor of the state, pursuant to *State* v. *McMurray*, 217 Conn. 243, 250, 585 A.2d 677 (1991). Under this standard, a conviction based on a challenged information is valid unless the information is "so obviously defective that by no reasonable construction can it be said to charge the offense for which conviction was had." (Internal quotation marks omitted.) Id. Because we have concluded that the information does suffer from such obvious defects, the state's claim fails even under the liberal review it espouses.

argued that the defendant had sufficient notice to be convicted of manslaughter in the first degree with a firearm because of the other counts in the information, which referred to the firing of gunshots from a handgun. Id., 237. We held that although the defendant may have been alerted to the possible presentation of evidence at trial regarding the use of a firearm, the mention of a firearm in a different count of the information was insufficient notice that he could have been convicted of manslaughter with a firearm. Id., 238. Our decision that sexual assault in the second degree cannot be a lesser offense included within sexual assault in the first degree in this case is consistent with Connecticut case law, which reveals a reluctance to find different degrees of sexual assault to be lesser included offenses of one another. In *State* v. *Ciotti*, 174 Conn. 336, 338, 387 A.2d 546 (1978), our Supreme Court held in a per curiam decision that sexual assault in the second degree is not a lesser included offense of sexual assault in the first degree when the information does not allege the age of the victim or the defendant because each crime contains elements that the other does not. Cf. *State* v. *Franko*, supra, 199 Conn. 494 (holding that sexual assault in second degree not lesser offense included within sexual assault in first degree because it is possible to commit one without necessarily committing other); *State* v. *Henry*, 76 Conn. App. 515, 551, 820 A.2d 1076 (holding that sexual assault in third and fourth degrees not lesser included offenses of sexual assault in first degree because they contain additional elements), cert. denied, 264 Conn. 908, 826 A.2d 178 (2003).

Our resolution of the defendant's claim is also consistent with our case law regarding lesser offenses included within other crimes. See *State* v. *Falcon*, 26 Conn. App. 259, 266, 600 A.2d 1364 (1991) (manslaughter in first degree with firearm cannot be lesser offense included within murder when no reference to firearm

or shooting in charging documents), cert. denied, 221 Conn. 911, 602 A.2d 10 (1992); compare *State* v. *Tomlin*, supra, 266 Conn. 614 (conviction of manslaughter in first degree with firearm appropriate lesser offense included within murder when information alleged defendant "did shoot and cause the death of [the victim]" [internal quotation marks omitted]).

Finally, strong considerations of due process underpin our decision. Only when the state's pleadings have "informed the defendant of the charge against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and [are] definite enough to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense" has the state performed its duty under the United States and Connecticut constitutions. (Internal quotation marks omitted.) *State* v. *Spigarolo*, 210 Conn. 359, 381, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989). A conviction of sexual assault in the second degree as a lesser offense included within the count of sexual assault in the first degree, without the age of the victim being alleged in that count of the charging documents, deprived the defendant of the opportunity to mount a defense to the very crime for which he was ultimately convicted.

We are mindful of the fact that defense counsel neither objected nor took an exception to the court's instruction to the jury that it could find the defendant guilty of sexual assault in the second degree. Nevertheless, we conclude that the instructional error was not harmless. Because the elements of the crimes are markedly different, we cannot say that had the defendant been afforded proper notice of his exposure to the charge of sexual assault in the second degree, the defense would have employed the same strategy as it

did and the conviction would have ensued. Consequently, the state has failed to demonstrate the harmlessness of the constitutional violation beyond a reasonable doubt. See *State* v. *Golding*, supra, 213 Conn. 240.

We conclude that the court's instruction on sexual assault in the second degree was a violation of the defendant's constitutional right to a fair trial and that the defendant was clearly harmed by this violation. Consequently, the defendant has satisfied the *Golding* standard and is entitled to relief. We therefore reverse the defendant's conviction of sexual assault in the second degree.[11]

B

The defendant next claims that the court improperly instructed the jury on the charge of risk of injury to a child. The defendant contends that the court improperly defined the word "likely" in the term "likely to impair the health or morals of a minor child," as "in all probability or possibility." The state concedes that the term "possibly" is an incorrect definition of "likely." It asserts, however, that the jury was not misled by the instruction on risk of injury to a child. We agree with the state.

Defense counsel did not object or take an exception to the court's instruction. We therefore review his claim under *State* v. *Golding*, supra, 213 Conn. 239–40, because the record is adequate for review, and the defendant's claim that the court improperly instructed

---

[11] We note the footnote in the state's brief conceding the inapplicability of sexual assault in the third degree but not conceding the inapplicability of sexual assault in the fourth degree as a lesser included offense within sexual assault in the first degree under the cognate pleadings approach. We decline, however, to address this issue without the benefit of adequate briefing and argument. See *State* v. *Waz*, 240 Conn. 365, 371 n.11, 692 A.2d 1217 (1997).

the jury as to an element of a charged offense is of constitutional dimension. See *State* v. *Romero*, supra, 269 Conn. 487.

This court, as well as our Supreme Court, has concluded that such a jury instruction is incorrect. *State* v. *Romero*, supra, 269 Conn. 489–92; *State* v. *Ritrovato*, 85 Conn. App. 575, 605, 858 A.2d 296 (2004), rev'd in part on other grounds, 280 Conn. 36, 905 A.2d 1079 (2006). The state concedes that the jury instruction in this case was similarly incorrect. Thus, our only inquiry is whether, under *Golding*'s third prong, it was reasonably possible that the jury was misled. *State* v. *Romero*, supra, 488. "In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury . . . is to be considered . . . as to its probable effect upon the jury in guiding [it] to a correct verdict in the case." (Internal quotation marks omitted.) *State* v. *Sorabella*, 277 Conn. 155, 891 A.2d 897, cert. denied, 549 U.S. 821, 127 S. Ct. 131, 166 L. Ed. 2d 36 (2006).

Considering the charge as a whole, we first note that the court's improper definition of the term "likely" as "possible" was also accompanied by the proper definition of the term as "probable." As our Supreme Court has concluded, such "accurate instructions [minimize] the potential harm flowing from the trial court's improper instructions on the meaning of the term 'likely.' " *State* v. *Romero*, supra, 269 Conn. 494.

Moreover, in finding the defendant guilty of risk of injury to a child, the jury necessarily found that the defendant had had contact with the victim's intimate parts in a sexual and indecent manner or that the defendant subjected the victim to contact with his intimate parts. In its instruction to the jury, the court broke down the risk of injury charge to three elements: (1) the victim was younger than the age of sixteen at the

time of the criminal acts; (2) the defendant had contact with the victim's intimate parts or subjected the victim to contact with the defendant's intimate parts; and (3) such contact with intimate parts took place in a sexual and indecent manner that was likely to impair the victim's health or morals.[12] The court also thoroughly

[12] The court gave the following instruction regarding the elements of the crime of risk of injury to a child: "To find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt: (1) at the time of the incident, the alleged victim was under the age of sixteen years; and (2) that the defendant had contact with the intimate parts of the alleged victim or subjected the alleged victim to contact with the defendant's intimate parts; and (3) that the contact with the intimate parts took place in a sexual and indecent manner, which was likely to impair the health and morals of the child. . . .

"[T]he state must prove that the defendant had contact with the intimate parts of the child or subjected the complainant to contact with the defendant's intimate parts. 'Intimate parts' means the genital area, groin, anus, inner thighs, buttocks or breasts. 'Contact' means the touching of intimate parts.

"The state must prove either that the defendant had contact with the child's genital area, groin, anus, inner thighs, buttocks or breasts, or that the defendant caused the child to make contact with the defendant's intimate parts. There need not be a touching of all the intimate parts. It is sufficient if any one of the intimate parts is touched. . . .

"[T]he state must prove that the contact with the intimate parts took place in a sexual and indecent manner, which was likely to impair the health or morals of the child. The contact with the intimate parts must have taken place in a sexual or indecent manner, as opposed to an innocent touching or an accidental, inadvertent or reflective touching.

" 'Sexual' means having to do with sex; and 'indecent' means offensive to good taste or public morals. The state must also show that the contact, which was sexual and indecent in nature, was likely to injure or weaken the health or morals of the child. The health of the child refers to the child's well being.

"As used here, 'morals' means good morals, living, acting and thinking in accordance with those principles and standards, which are commonly accepted among us as right and decent.

"I want to stress that the state does not have to prove that the defendant actually did impair the health or morals of the child. Rather, the state must show that the defendant's behavior was likely to impair the child's health or morals.

" 'Likely' means in all probability or possibility. Thus, the state must show that it was possible or probable that the sexual and indecent behavior of the defendant would injure or weaken the child's health or morals. There

explained the concept of reasonable doubt and the state's burden of proving each element of each charge beyond all reasonable doubt. The defendant challenges only the second half of the third element of the charge, in which the term "likely" was defined. The defendant does not challenge the remainder of the risk of injury charge, including that the contact with the intimate parts of the victim or defendant must have occurred in a sexual and indecent manner. Given the unchallenged propriety of these instructions, we may rely on the jury's duly reached conclusion that sexual or indecent contact between the defendant and the victim took place. See *State* v. *Romero*, supra, 269 Conn. 493.

We conclude that the defendant's indecent sexual conduct in relation to the victim, conduct the jury found to have occurred, must be conduct that is "likely to impair" the health or morals of a child. See, e.g., *State* v. *Romero*, supra, 269 Conn. 493 ("[o]nce the jury determined that . . . intercourse and mutual sexual touching took place, as described by [the victim], it is difficult to imagine a finding that this conduct could *not* be deemed likely—in the context of probably—to impair [the victim's] morals" [emphasis in original]); see also *State* v. *Ritrovato*, supra, 85 Conn. App. 605 ("because the jury . . . found the defendant guilty of having sexually assaulted the victim, we find no basis for any argument that the jury could have been uncertain that such

is no requirement that the state prove actual harm to the child's health or morals. . . .

"Again, the state must prove beyond a reasonable doubt the following three elements: (1) that the complainant was under sixteen years of age; and (2) that the defendant had contact with the intimate parts of a child or subjected that child to contact with the defendant's intimate parts; and (3) that the contact with the intimate parts took place in a sexual and indecent manner, which was likely to impair the health or morals of the child.

"If you find that the state has proven these three elements beyond a reasonable doubt, you should find the defendant guilty. If, however, you do not find all these elements proven beyond a reasonable doubt, you should find the defendant not guilty."

an assault did, in fact, impair the child, as alleged in the risk of injury charge").[13] We therefore conclude that the jury could not reasonably have been misled and, accordingly, the defendant was not clearly deprived of a fair trial.

## II

The defendant next raises two evidentiary claims. Our standard of review of evidentiary claims is well settled. "[T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . ." (Internal quotation marks omitted.) *State* v. *Aaron L.*, 272 Conn. 798, 811, 865 A.2d 1135 (2005).

## A

The defendant's first evidentiary claim is that the court improperly admitted evidence of the defendant's prior misconduct that was not substantially similar to the offense charged and was therefore unduly prejudicial. Although we agree with the defendant that the challenged testimony was admitted improperly, we conclude that its admission was harmless.

Prior to trial, the state filed a motion in limine notifying the court of its intention to call T, a close friend of the victim. T was expected to testify that on the night of the assault, the defendant had made overtures to her similar to those he had made to the victim and that on a prior occasion, he had placed his hands up the back of her blouse. The court allowed the testimony, over

---

[13] We are cognizant of the fact that in both *Romero* and *Ritrovato*, there was a jury finding of sexual intercourse, whereas here we rely on a jury finding of indecent sexual contact. We do not, however, believe that in this case, the distinction warrants a different result.

defense counsel's objection, to prove intent, motive and a pattern of conduct.

At trial, T testified that she had encountered the defendant on the night of the assault and that he had asked her for a hug, so she hugged him. She stated that she had also done so in the past. She added, after the court allowed the state to refresh her recollection, that the defendant had rubbed her back in the past. The court did not allow her to testify about "how he rubbed her back." The court gave a limiting instruction to the jury on the proper use of prior misconduct evidence.

"As a general rule, evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused. . . . Such evidence cannot be used to suggest that the defendant has a bad character or a propensity for criminal behavior. . . . On the other hand, evidence of crimes so connected with the principal crime by circumstance, motive, design, or innate peculiarity, that the commission of the collateral crime tends directly to prove the commission of the principal crime, is admissible. . . . We have developed a two part test to determine the admissibility of such evidence. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. . . . Second, the probative value of the evidence must outweigh its prejudicial effect." (Citations omitted; internal quotation marks omitted.) *State* v. *Aaron L.*, supra, 272 Conn. 820.

Evidence offered to prove a common plan or scheme constitutes an exception to the general rule against admitting prior misconduct evidence. See id. To be admissible under the common scheme exception, "the marks which the . . . charged [and uncharged] offenses have in common must be such that it may be logically inferred that if the defendant is guilty of one

he must be guilty of the other. . . . In order to assess the defendant's claim, we must examine the [prior uncharged misconduct] evidence and compare it to the charged offense." (Internal quotation marks omitted.) *State* v. *Merriam*, 264 Conn. 617, 661–62, 835 A.2d 895 (2003). Our Supreme Court has stated that "[t]o guide this analysis . . . [e]vidence of *prior sex offenses* committed with persons other than the prosecuting witness is admissible to show a common design or plan whe[n] the prior offenses (1) are not too remote in time; (2) are similar to the offense charged; and (3) are committed upon persons similar to the prosecuting witness. . . . We are more liberal in admitting evidence of other criminal acts to show a common scheme or pattern in [trials of] sex related crimes than [in trials of] other crimes." (Emphasis added; internal quotation marks omitted.) Id., 662.

The defendant concedes that T was approximately the same age as the victim and that the act of hugging her occurred on the same day as the alleged sexual assault. The defendant argues, however, that the act of hugging a young girl or rubbing her back is not similar conduct to the alleged sexual assault. We agree with the defendant.

Although the state would have us find T's testimony admissible because it revealed that the defendant had made overtures to T that were similar to those made to the victim, we are not persuaded. We have previously held that evidence of prior misconduct that is not sexual misconduct is not sufficiently similar to the offense of sexual assault to be admissible. See *State* v. *Jacobson*, 87 Conn. App. 440, 454, 866 A.2d 678, cert. granted on other grounds, 273 Conn. 928, 873 A.2d 999 (2005).

In *Jacobson*, a sexual abuse case, the court allowed a witness to testify that the defendant had maintained a relationship with her son very similar to the one alleged

between the defendant and the victims. Id., 452–53. On appeal, this court found that the admission of that testimony was improper because of the "crucial difference" that the witness did not claim that the defendant had actually sexually abused her son. Id., 454. "That said, it cannot be inferred logically that if the defendant was guilty of the uncharged misconduct, he also must have been guilty of the charged offenses involving [the victims]." Id. Accordingly, we conclude that the court improperly admitted T's testimony.

Our inquiry does not end with a finding of an improper evidentiary ruling. "When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful." (Internal quotation marks omitted.) *State* v. *Sawyer*, 279 Conn. 331, 352, 904 A.2d 101 (2006). Our Supreme Court recently clarified the standard for harmless error review of erroneous evidentiary rulings in the context of criminal cases. "[A] nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) Id., 357.

"[W]hether [the improper admission of a witness' testimony] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the [improperly admitted] evidence on the trier of fact and the result of the trial. . . . [In a case that] involves the improper admission of uncharged misconduct evidence, the most relevant factors to be considered are the strength of the state's case and the impact of the

improperly admitted evidence on the trier of fact."
(Citations omitted; internal quotation marks omitted.)
Id., 358. In *State* v. *Jacobson*, supra, 87 Conn. App.
454–55, we held that the improper admission of prior
misconduct was harmless because it was not volumi-
nous and did not contain any allegation of abuse.

T's testimony was not the mainstay of the prosecu-
tion's case. It played a minor role in the state's evidence,
was mentioned only once during rebuttal and was refer-
enced in the state's closing argument only for constancy
of accusation. Moreover, there was no allegation that
the defendant actually assaulted T or committed any
other act upon her so extreme that the jury might be
prejudiced. Furthermore, to the extent that T's testi-
mony was admitted to show the defendant's common
scheme to force teenage girls to have intercourse with
him, its admission was harmless, as the defendant was
acquitted of sexual assault in the first degree. Therefore,
we have a fair assurance that the testimony did not
affect the jury's verdict.

B

Finally, the defendant claims that the court abused its
discretion by admitting into evidence hospital records
containing statements that might have misled the jury
into believing that the examining physician had con-
cluded, as an expert medical opinion, that the victim
was sexually assaulted. We find no abuse of discretion.

The following facts and procedural history are perti-
nent to our resolution of the defendant's claim. Prior
to the testimony of Susan Dibs, the attending physician
at Yale-New Haven Hospital on the day of the victim's
medical examination, defense counsel objected to the
admission of portions of the hospital report. The defen-
dant argued that under the entry, "diagnosis," the refer-
ence to "sexual assault" amounted to an expert
conclusion. He further argued that under the heading

"assessment," the report stated, "sexual assault," and that this, too, was conclusive as an expert opinion. The state responded that the report was admissible as an ordinary medical record containing the statement of someone seeking treatment.

The court reviewed the report and redacted any references to the identity of the perpetrator. The victim's statements that she was assaulted, however, were left in the report. The redacted report was admitted during Dibs' testimony. On cross-examination, defense counsel asked Dibs about the reference to sexual assault under the heading "assessment." Dibs confirmed that she had merely recorded what the victim had told her. She also reiterated her prior testimony, given on direct examination, that the victim's medical examination did not reveal signs of sexual assault. The court gave the jury a limiting instruction as to the permissible consideration of the victim's out-of-court statements to other persons.[14]

"It is well settled that out-of-court statements made by a patient to a physician for the purposes of obtaining medical diagnosis and treatment are admissible under the treating physician exception to the hearsay rule." (Internal quotation marks omitted.) *State* v. *William B.*, 76 Conn. App. 730, 739, 822 A.2d 265, cert. denied, 264 Conn. 918, 828 A.2d 618 (2003). Ordinarily, an expert witness may not express an opinion on an ultimate

---

[14] The court gave the following jury instruction: "[E]vidence of out-of-court statements by the complainant of sexual assault against her by the defendant is not to be considered by you to prove the truth of the matter asserted . . . in those out-of-court statements, but it is presented for you to consider when assessing the credibility that you will give to the complainant's in-court testimony. . . . In determining whether these out-of-court statements are corroborative, or not corroborative, of the complainant's testimony in court, you should consider all of the circumstances under which these out-of-court statements were made, and to whom, and whether the statements made to those persons were or were not consistent with the complainant's testimony in court."

issue of fact, which must be decided by the trier of fact. Nonetheless, "[a] physician, who is consulted by a patient for the purpose of obtaining from her [or him] professional medical treatment or advice incidental thereto, may testify to her [or his] opinion even though it is based, in whole or in part, on statements made . . . by the patient, and, *of course, she [or he] may also testify to such statements.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Kelly*, 256 Conn. 23, 44, 770 A.2d 908 (2001).

The defendant argues that the medical report impermissibly gave an opinion as to whether a sexual assault had in fact occurred and that as a result, the report was highly prejudicial to him. The defendant cites *State* v. *Iban C.*, 275 Conn. 624, 881 A.2d 1005 (2005). In that case, the examining physician offered an actual diagnosis, both within her unredacted written report and in her oral testimony, that sexual assault had occurred. Our Supreme Court ruled that such evidence was inadmissible because it was based in part on the victim's own account, it endorsed the very credibility the jury was to determine and "functioned as an opinion as to whether the victim's claims were truthful." Id., 636.

The present case is clearly distinguishable from *Iban C.* In this case, no diagnosis was offered as to whether a sexual assault had occurred. The state did not present the hospital record for the purpose of providing an expert conclusion but merely as a means of corroborating the victim's size at the time of the assault and as a recording of the victim's account of what had happened. Dibs made clear through her testimony that the statements in question were merely recordings of the victim's statements and not her own conclusions. She also stated on direct examination, and reiterated on cross-examination, that there was no medical proof of sexual assault. Thus, any impermissible inferences the jury

might have drawn were remedied by Dibs' explicit in-court testimony and by the court's limiting instruction. As a result, we conclude that the court did not abuse its discretion by admitting the redacted hospital records into evidence.

The judgment is reversed only as to the conviction of sexual assault in the second degree and the case is remanded with direction to render judgment of not guilty as to that offense only. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

